**F I L E D**
United States Court of Appeals
Tenth Circuit

**JUN 30 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

OMI HOLDINGS, INC.,

    Plaintiff-Appellant-
    Cross-Appellee,

v.

ROYAL INSURANCE COMPANY OF
CANADA; SEABOARD SURETY
COMPANY OF CANADA,

    Defendants-Appellees-
    Cross-Appellants,

ROYAL INDEMNITY COMPANY;
ZURICH INSURANCE COMPANY,

    Defendants.

No. 97-3022
No. 97-3041
No. 97-3042

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 95-2519-KHV)**

---

Steven H. Hoeft (Byron L. Gregory and Paul L. Langer of McDermott, Will & Emery,
Chicago, Illinois, and Richard N. Roe, Lowe, Farmer, Bacon & Roe, Olathe, Kansas, with
him on the brief) of McDermott, Will & Emery, Chicago, Illinois for Plaintiff-Appellant.

Robert M. Callagy and John Haybob (Christina Magee of Niewald Waideck & Brown,
Kansas City, Missouri, and Mark Lerner of Satterlee Stephens Burke & Burke, L.L.P.,
New York, New York, with him on the brief) of Satterlee Stephens Burke & Burke,
L.L.P., New York, New York for Defendants-Appellees.

---

Before **ANDERSON**, **BALDOCK**, and **MURPHY**, Circuit Judges.

_____

**BALDOCK**, Circuit Judge.

_____

Plaintiff OMI Holdings, Inc. (OMI) is a wholly-owned subsidiary of Canadian brewer, John Labatt, Ltd. (Labatt). OMI is an Iowa corporation with its principal place of business in Minnesota. During the period from 1985 to 1992, OMI purportedly held two United States patents covering the process for making large-granule wheat starch (LGS) and the process for making carbonless paper from LGS. On November 6, 1986, Manildra Milling Corporation, a Kansas Corporation and OMI's chief competitor in the LGS market, filed suit against OMI in the United States District Court for the District of Kansas seeking, _inter alia_, a declaration that OMI did not hold valid and enforceable patents covering the process for producing LGS and the process for producing carbonless paper from LGS.

Between 1986 and 1990, OMI vigorously defended the patent suit. During this four-year period, OMI and Manildra conducted substantial discovery and engaged in settlement discussions. On November 5, 1990, Labatt's general counsel retained an additional attorney to act as lead trial counsel in the case. The new attorney inquired whether Labatt's insurance would cover the costs of defending the case and whether OMI had notified its carriers of the lawsuit. Although Labatt is a sophisticated, multi-national corporation with in-house legal counsel and an in-house risk management department, no

2

one in the company had considered whether the cost of defending the suit was covered under any of the company's numerous insurance policies.

OMI notified Zurich Insurance Company, Royal Insurance Company of Canada (Royal) and Seaboard Surety Company of Canada (Seaboard) of the patent infringement suit on November 26, 1990, less than four months before trial. OMI notified Royal Indemnity Company approximately six months later. The insurance companies denied coverage. The companies first asserted that Manildra's claims were not covered under the policies issued to Labatt. In the alternative, the companies denied coverage on the ground that OMI's four-year delay violated the provisions in the insurance contracts requiring prompt notice of any claims covered by the policies.

On cross-motions for summary judgment, the district court concluded that the claims asserted against OMI fell within the scope of the policies issued to OMI. However, the district court concluded that OMI's egregious delay in notifying the insurance companies violated the policies' notice provisions. Accordingly, the district court concluded that the companies were not obligated to defend the case.

On appeal, OMI argues that the district court erroneously concluded that the insurance companies[1] were prejudiced by OMI's late notice. In the alternative, OMI argues that a disputed issue of material fact exists regarding prejudice, and therefore, the

---

[1] Plaintiff appeals only the district court's decision regarding Seaboard Surety Company of Canada and Royal Insurance Company of Canada. Zurich Insurance Company and Royal Indemnity Company are not parties to this appeal.

3

district court improperly decided the issue on summary judgment.

The insurance companies cross-appeal, contending that the district court erroneously denied their Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. Specifically, Defendants contend that the district court's exercise of personal jurisdiction over them violated the Kansas long-arm statute and the Due Process Clause of the Fifth Amendment. Defendants, however, urge us to reach their cross-appeal only if we decide in favor of Plaintiff on the merits of its appeal. We are unable to comply with this request. Because a court without jurisdiction over the parties cannot render a valid judgment, we must address Defendants' personal jurisdiction argument before reaching the merits of the case. Leney v. Plum Grove Bank, 670 F.2d 878, 879 (10th Cir. 1982) (court must consider cross-appeal on personal jurisdiction before reaching merits of case.). Our jurisdiction arises under 28 U.S.C. § 1291. We conclude that the district court's exercise of personal jurisdiction over Defendants deprived them of the due process rights guaranteed by the Constitution. Accordingly, we reverse and remand.

## I. Jurisdiction

"Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, we proceed directly to the constitutional issue." Federated Rural Electric Ins. Corp. v. Kootenai Electric Coop., 17 F.3d 1302, 1305 (10th Cir. 1994) (internal citation omitted) (citing Volt Delta Resources, Inc. v. Devine, 740 P.2d 1089, 1092 (Kan. 1987)). "The Due Process Clause protects an

4

individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1984). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1979). The requirement that "minimum contacts" be present protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar. See id. at 292. Moreover, "it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." Id.

The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 472 (internal quotations omitted). Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. Helicopteros Nacionales de

5

Colombia v. Hall, 466 U.S. 408, 415 (1983). However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (quoting Helicopteros, 466 U.S. at 416.).

In this case, Plaintiff concedes that the district court could not maintain general personal jurisdiction over Defendants. Aplt's Resp. Br. at 35. Accordingly, we review Defendants' contacts with the forum to determine whether the district court's exercise of specific personal jurisdiction over Defendants offends due process. In doing so, we resolve all factual disputes in favor of Plaintiff and review the district court's jurisdictional ruling de novo. Kuenzle, 102 F.3d at 456.

"The Plaintiff bears the burden of establishing personal jurisdiction over the defendant." Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988). When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996). The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must

6

present a compelling case demonstrating "that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477; see also Rambo, 839 F.2d at 1419 n.6.

Our specific jurisdiction inquiry is two-fold. First, we must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297. Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, Burger King, 471 U.S. at 472, and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 109 (1987) (internal quotations omitted) (emphasis in the original). Second if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." Id. at 113. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. See id.

Although distinct, the two components of our "due process inquiry are related inasmuch as both originated in the idea that a court cannot subject a person to its authority where the maintenance of the suit would offend 'traditional notions of fair play and

7

substantial justice.'" <u>Metropolitan Life</u>, 84 F.3d at 568 (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). Moreover, an interplay exists between the two components, such that, "depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." <u>Id</u>. The First Circuit has aptly described this interplay as follows:

> We think . . . that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]."

<u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 210 (1st Cir. 1994); <u>accord</u> <u>Burger King</u>, 471 U.S. at 477. With these principles in mind, we proceed to the present appeal.

### A. Minimum Contacts

### 1. Purposeful Availment

The first step in our minimum contacts analysis requires us to determine whether the evidence Plaintiff presented to the district court demonstrated that Defendants purposely availed themselves of the privilege of conducting business in Kansas. Purposeful availment requires actions by the Defendant which "create a substantial connection with the forum state." <u>Asahi</u>, 480 U.S. at 109. Thus, courts have been unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than

8

the defendant.  World-Wide Volkswagen, 444 U.S. at 295.  Accordingly, we must examine the quantity *and* quality of *Defendants'* contacts with Kansas to determine whether the district court's assertion of personal jurisdiction over Defendants comports with due process.

The record before the district court demonstrates that Defendants' contacts with Kansas arose solely from the issuance of insurance policies in which they agreed to defend certain claims against Plaintiff in any United States forum.  The territory of coverage clause in Defendant Seaboard's policy extends coverage to "legal proceedings brought in the Courts of the United States . . . or the Courts of any of the states of the United States."  The territory of coverage clause in Defendant Royal Indemity's policy extends coverage to "any legal proceeding . . .."  The district court determined that by agreeing to defend their insured against claims covered by the policies in any United States forum, Defendants created minimum contacts such that the court could properly resolve a dispute between the Plaintiff and Defendants as to the existence of coverage.

The question of whether a foreign insurer establishes minimum contacts with a forum by selling an insurance policy with a territory of coverage clause which includes the forum has been heavily litigated in a number of State courts and several of our sister circuits.  The results of these decisions, many of which are in conflict, are difficult to reconcile.  Therefore, we begin our analysis with a survey of the relevant case law.

In Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co., 907 F.2d 911,

913-14 (9th Cir. 1990), a Canadian insurer refused to reimburse a California-based automobile insurer who conducted business in Montana for an accident which occurred in Montana. The California-based insurance company sought declaratory relief and damages against the Canadian insurer in the United States District Court for the District of Montana for bad faith refusal to reimburse and breach of contract. The district court determined that the exercise of personal jurisdiction over the Canadian insurer, who maintained no offices in Montana and issued no policies in Montana, but whose policy contained a territory of coverage clause extending to Montana would offend notions of due process and dismissed the suit pursuant to Fed. R. Civ. P. 12(b)(2). The Ninth Circuit reversed. Relying heavily on the Canadian company's status as an insurer, the court explained:

> Unlike the automobile sellers in Worldwide Volkswagen, automobile liability insurers contract to indemnify and defend the insured for claims that will foreseeably result in litigation in foreign states. Thus litigation requiring the presence of the insurer is not only foreseeable, but contracted for by the insurer. Moreover, unlike a product seller or distributor, an insurer has the contractual ability to control the territory into which its "product" – the indemnification and defense of claims – will travel.

Id. at 914 (internal quotations omitted). Noting the control the Canadian insurer held over its amenability to suit, the court held that the insurer "purposefully availed itself of the Montana forum when it contracted to indemnify and defend claims arising there" and when the insured event occurred in the forum. Id.

The Ninth Circuit, however, reached a seemingly contrary result in Hunt v. Erie

10

Ins. Group, 728 F.2d 1244 (9th Cir. 1984). In Hunt, the plaintiff, a passenger covered by the defendant's insurance policy, was injured in a collision near Vail, Colorado. Unable to receive proper medical treatment in Colorado, the plaintiff moved to California for treatment. When the plaintiff attempted to recover under the policy, the insurer denied coverage. The plaintiff filed suit in the United States District Court for the Northern District of California. In response, the insurer moved to dismiss the suit for lack of personal jurisdiction. The district court agreed and dismissed the suit.

On appeal, the plaintiff argued that the insurer created minimum contacts by issuing a policy covering accidents anywhere in the United States and by not specifying the state where the benefits were to be paid. The plaintiff further argued that "if there are states where Erie wished not to be sued, Erie should have so structured its policy" and that "the promise follows the claimant wherever the claimant goes, since the policy does not provide otherwise." The Ninth Circuit flatly rejected Hunt's argument and refused to find that the defendant purposely availed itself to the forum on the sole basis of the territory of coverage clause or the fact that the defendant failed to structure its policy to exclude the possibility of defending a suit wherever an injured claimant requires medical care. Id.

The only minimum contacts factor distinguishing Farmers and Hunt is that the accident underlying the suit in Farmers occurred in the forum state. The Farmers court explained that while the territory of coverage clause in Hunt was not enough to establish

11

minimum contacts, the combination of an accident in the forum and a territory of coverage clause including the forum created sufficient minimum contacts. The problem with this position is that minimum contacts must arise from actions by "the *defendant* himself", which create a substantial connection with the forum state. E.g., Burger King, 471 U.S. at 475 (emphasis added). By relying on the location of the accident, the court based its finding of purposeful availment on the acts of the insured and a random third-party. The insured and third-party's acts, however, are not relevant to measuring a defendant's minimum contacts with a forum state. See id. (minimum contacts cannot be established by the unilateral activity of the plaintiff or a third person).

Applying legal principles analogous to those relied on in Farmers, the Fourth Circuit reached a result contrary to Hunt in Rossman v. State Farm Mut. Auto. Ins. Co., 832 F.2d 282, 286-87 (4th Cir. 1987). In Rossman, an automobile insurer negotiated, wrote, issued and delivered a liability insurance policy in Illinois, covering an automobile garaged in Illinois and driven primarily by an Illinois resident. The insured also paid the premiums in Illinois. The insured allowed his son, who was residing in Virginia, to remove the car from Illinois to Virginia. The insurer received no notice of the move. Shortly after moving the vehicle, the policy holder's son was involved in a collision with Rossman. The insurance company denied coverage and Rossman filed suit seeking declaratory relief in Virginia.

On appeal, the insurance company argued that the district court improperly

exercised personal jurisdiction over it.  Applying reasoning analogous to that rejected by the Ninth Circuit in Hunt, the Fourth Circuit held that solely by issuing a policy with a territory of coverage clause including Virginia, the company created sufficient minimum contacts to support the district court's exercise of personal jurisdiction.  Id. at 286.

Rossman is troublesome for several reasons.  First, the court's holding is based almost entirely on foreseeability.  The Supreme Court, however, has cautioned that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  World-Wide Volkswagen, 444 U.S. at 295.  Second, within its foreseeability analysis, by chastising the defendant for having the ability to exclude certain forums from coverage and not exercising that ability, the court placed great weight on what the defendant did not do.  Such reliance, however, is clearly at odds with the Supreme Court's mandate that minimum contacts be based on the defendant's affirmative actions which create a substantial connection with the forum state.  See Burger King, 471 U.S. at 475; Asahi, 480 U.S. at 112.

In August v. HBA Life Ins. Co., 734 F.2d 168 (4th Cir. 1987) the Fourth Circuit again took an expansive view of minimum contacts in the insurance context.  In that case, the insured brought suit against his insurer in Virginia.  The policy, however, was issued to the insured in Arizona while he was an Arizona resident.  Thereafter, the insured moved to Virginia and began mailing his premiums from Virginia to Arizona.  The insured then filed a claim with the company from Virginia.  The insurer denied the claim

13

and sought to have the insured enter into an agreement which would have reduced coverage. The court held that by accepting premiums from Virginia and attempting to amend the agreement in Virginia, the defendant established contacts sufficient to permit personal jurisdiction over it.

In Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1420 (10th Cir. 1988), a nonresident insurer issued a policy to an Alabama resident covering a truck located in Alabama. The insured later moved to Texas where the truck was stolen. After filing a claim with the insurance company, the insured moved to Oklahoma. The insurer denied the claim and the insured filed suit in the Oklahoma district court. The district court dismissed the claim for lack of personal jurisdiction. We affirmed the district court, holding that the insured's random and fortuitous act of moving to Oklahoma and the insurer's contacts with them in that state did not satisfy the minimum contacts standard.

Surveying the relevant case law, we criticized August, stating that "the Fourth Circuit may have stretched the minimum contacts test too far." Id. at 1420 n.7. From a minimum contacts perspective, Farmers and Rossman are even more troubling than August. In those cases, the insurers received no premiums from the forum state and neither insurer attempted to reach into the forum state to renegotiate the insurance agreement.

Also notable is the D.C. Circuit's decision in Eli Lilly and Co. v. Home Ins. Co. 794 F.2d 710 (D.C. Cir. 1986). In Eli Lilly, the court permitted the district court to

14

exercise personal jurisdiction over a liability insurer who issued an insurance policy with a territory of coverage clause including the forum state. The court stated that an insurer who agreed to defend its insured in a certain forum should reasonably foresee being impleaded there. Id. at 720. The court further reasoned that because the insurer carefully gauged the risk involved with each policy and controlled the area in which it would defend claims, that it should have excluded the forum from its coverage if it did not want to be haled into court there. Id. at 721. Thus, the court found that the district court properly exercised personal jurisdiction over the defendant. Id.

Like Rossman and Farmers, the analysis employed by Eli Lilly is problematic. The court placed significant weight on the fact that the insurer should have foreseen that the insured would attempt to implead it in the jurisdiction if a dispute over coverage arose. What the court ignored, however, was that a court must have personal jurisdiction over a third-party before that party may be impleaded into the suit. 4 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1444 (2d ed. 1990). Thus, whether a defendant may foresee that a plaintiff may attempt to implead it into an action in a foreign forum is of little relevance in determining whether a defendant has established minimum contacts with that forum. Moreover, the court's assertion of jurisdiction seems to be based entirely on foreseeability – a position at odds with the Supreme Court's directive that foreseeability alone is an insufficient basis on which to establish minimum contacts. See World-Wide Volkswagen, 444 U.S. at 295. Finally, the

15

court's reliance on the defendant's failure to exclude the forum from the territory of coverage suggests that the court based its finding of minimum contacts on actions other than those of the defendant itself. See e.g. Asahi, 480 U.S. at 109.

We are also troubled by the apparent assumptions in Farmers, Rossman, and Eli Lilly that by agreeing to defend its insured in any forum, an insurer foresees being sued by its own insured in any forum when a coverage dispute arises. An insurance company who issues a policy in which it agrees to defend its insured in a certain forum can undoubtedly foresee that it may have to provide a defense for its insured who is haled into court there. It does not follow, however, that by agreeing to defend in the forum, that the insurance company also by implication agrees that it will litigate disputes between it and its insured regarding the terms of an insurance contract in a foreign forum. While it is reasonably foreseeable that an insured would be involved in litigation with a third-party in another forum, it is not necessarily foreseeable that a dispute between the insured and the insurer over an insurance contract prepared, negotiated, and executed pursuant to Canadian law in Canada with a Canadian company would be litigated in a foreign forum where neither party has any contacts.

Although we disagree to some extent with the means by which these courts have justified finding minimum contacts on the basis of a territory of coverage clause, we do agree that by contracting to defend the insured in the forum state, the insurer creates some contact with the forum state. Our conclusion that Defendants' actions demonstrate some

16

showing of minimum contacts with the forum state does not suggest that contacts based solely on an insurance policy's territory of coverage clause implicate a strong connection between Defendants and the forum state. On the contrary, we believe that sole reliance on the territory of coverage clause creates contacts which are qualitatively low on the due process scale.

## 2. Arising out of

Next, we must determine whether a nexus exists between Defendant's forum-related contacts and the Plaintiff's cause of action. <u>Asahi</u>, 480 U.S. at 109. We have little problem finding the required nexus. Defendants' contacts arose when the companies issued policies agreeing to defend Plaintiff from suit in Kansas. Plaintiff complains that Defendants wrongfully refused to defend them under these policies. Plaintiff's claim clearly arose out of Defendants' forum-related activity.

We conclude Defendants's actions, although limited, establish minimum contacts with Kansas. Our due process inquiry does not end with this determination. Instead, we consider the quality of those minimum contacts in light of several factors to determine whether the district court's exercise of personal jurisdiction over Defendants violates notions of "fair play and substantial justice." <u>See</u> <u>Burger King</u>, 471 U.S. at 476.

## B. Reasonableness

In determining whether exercise of jurisdiction is so unreasonable as to violate "fair play and substantial justice," we consider: (1) the burden on the defendant, (2) the

forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. Asahi, 480 U.S. at 113. The strength of these factors sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Burger King, 462 U.S. at 477. Conversely, the factors may be so weak that even though minimum contacts are present, subjecting the defendant to jurisdiction in that forum would offend due process. See Ticketmaster, 26 F.3d at 210. Applying this analytical framework, we conclude that personal jurisdiction over Defendants in the District of Kansas violates due process.[2]

### 1. Burden on Defendant of Litigating in the Forum

While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction.[3] See World-Wide Volkswagen, 444 U.S. at 292. This factor is of special

---

[2] It is noteworthy that many of the reasonableness factors relied on by the courts in Farmers and Rossman are not present in this case. We find it particularly significant that in this case, unlike Farmers and Rossman, the forum state has virtually no interest in litigating the case, the dispute is governed by Canadian law, and Kansas would not provide a more efficient forum in which to litigate.

[3] "If the burdens of trial are too great for a plaintiff, the plaintiff can decide not to sue or, perhaps, to sue elsewhere. A defendant has no such luxury." Insurance Company of North America v. Marina Salina Cruz, 649 F.2d 1266, 1272 (9th Cir. 1981).

18

significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous. Id., 26 F.3d at 212. When the defendant is from another country, this concern is heightened and "great care and reserve should be exercised" before personal jurisdiction is exercised over the defendant. Asahi, 480 U.S. at 114. However, in certain cases, the interests of the plaintiff and the forum in exercising jurisdiction may be so strong as to "justify even the serious burdens placed on the alien defendant." Id.

The burden on Defendants in this case is significant. Defendants are Canadian corporations who have no license to conduct business in Kansas, maintain no offices in Kansas, employ no agents in Kansas, and insure no Kansas residents. Defendants issued insurance policies in Canada to a Canadian company in accordance with Canadian law. In order to litigate the case in Kansas, Defendants will not only have to travel outside their home country, they will also be forced to litigate the dispute in a foreign forum unfamiliar with the Canadian law governing the dispute. Accordingly, we find that this factor weighs strongly in Defendants' favor.

### 2. Forum State's Interest in Adjudicating the Dispute

The second factor in our reasonableness inquiry examines the forum state's interest in adjudicating the dispute. States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors. Burger King, 471 U.S. at 483. Although less compelling, a state may also have an interest in

adjudicating a dispute between two non-residents where the defendant's conduct affects forum residents. See Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 148 (3d Cir. 1992) (citing Calder v. Jones, 465 U.S. 783 (1984)). The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law. See Asahi, 480 U.S. at 115.

We have little trouble concluding that this factor weighs heavily in favor of Defendants. Neither Plaintiff nor Defendants are Kansas residents. Neither party conducts business in Kansas, is licensed to do business in Kansas, or employs Kansas citizens. The insurance contract giving rise to the lawsuit was drafted, negotiated, and executed in Canada. Neither party disputes that Canadian law governs the case. Neither party claims that Defendants committed a tortious act against or breached a contract with a Kansas resident. This in not a case where a Kansas resident is attempting to recover directly from the insurer for acts committed by an insolvent insured. In such a case, Kansas' interest in litigating the suit would undoubtedly be much higher.

Moreover, Plaintiff's argument that because the dispute is in part about who will pay Kansas attorneys, that the state has an interest in adjudicating the dispute is unpersuasive. The record contains no evidence showing that the attorneys have lost or are in danger of losing their fees. Even assuming the attorneys remain unpaid, the record is entirely devoid of evidence suggesting that OMI could not pay the fees if it is ultimately determined that the Defendants had no duty defend.

20

### 3. Plaintiff's Interest in Convenient and Effective Relief

The third step in our reasonableness inquiry hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in a another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit. See Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985). This danger is not present in this case.

Instead, on the record before us, we conclude this factor weighs in favor of Defendants as well. Plaintiff argues that Kansas is the most efficient forum in which to litigate this coverage dispute. The record, however, contains insufficient evidence to support this position. Although they attempt to minimize the connection, Plaintiff is a subsidiary of Canadian brewer John Labatt Ltd.. Defendants entered into the disputed insurance contracts with Labatt in Canada and the record shows that Labatt is participating in the litigation. The parties agree that Canadian law governs the terms of the policies.

Even ignoring Labatt's role, Plaintiff is a large corporation incorporated in Iowa with its principal place of business in Minnesota who maintains no business presence in Kansas. The parties list ninety-four witnesses whose testimony is relevant to resolving the dispute. Of those 94 witnesses, seven are from Kansas, 42 are from other states and

45 are from Canada. These facts convince us that Plaintiff may receive convenient relief in an alternative forum.

4. Interstate Judicial System's Interest in Obtaining Efficient Resolution

The fourth factor in our reasonableness inquiry examines whether the forum state is the most efficient place to litigate the dispute. Key to this inquiry are the location of witnesses, e.g. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 574 (2d Cir. 1996), where the wrong underlying the lawsuit occurred, e.g. Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 148 (3d Cir. 1992), what forum's substantive law governs the case, e.g. FDIC v. British-American Ins. Co., Ltd., 828 F.2d 1439, 1444 (9th Cir. 1987), and whether jurisdiction is necessary to prevent piecemeal litigation. See Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 850-51 (11th Cir. 1988).

The witnesses relevant to this dispute are largely located in Canada and states other than Kansas. The insurance policies were negotiated, drafted, and executed in Canada and are governed by Canadian substantive law. Plaintiff need not litigate the action in Kansas to prevent piecemeal litigation. The record suggests, and Plaintiff does not make any contrary argument, that Plaintiff could have joined all of the insurance companies in Canada. Therefore, a Canadian forum was apparently available in which Plaintiff could join all Defendants in one location. We conclude that litigating the dispute in Kansas would not be more efficient than in Canada.

5. States Interest in Furthering Fundamental Substantive Social Policies

The fifth factor we consider is the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies. Our analysis of this factor focuses on whether the exercise of personal jurisdiction by Kansas affects the substantive social policy interests of other states or foreign nations. See Asahi, 480 U.S. at 115. The possible conflict with a foreign nation's sovereignty "is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1333 (9th Cir. 1985). Nevertheless, the Supreme Court has cautioned that "great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Asahi, 480 U.S. at 115.

Important to this inquiry is the extent to which jurisdiction in the forum state interferes with the foreign nation's sovereignty. Id. Facts courts have relied on to determine whether the exercise of jurisdiction interferes with sovereignty include whether one of the parties is a citizen of the foreign nation, see FDIC v. British-American Ins. Co., Ltd., 828 F.2d at 1444, whether the foreign nation's law governs the dispute, e.g., id.,and whether the foreign nation's citizen chose to conduct business with a forum resident. See Burger King, 471 U.S. at 476; Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 484 (3d Cir. 1993).

Exercising personal jurisdiction in Kansas would affect the policy interests of Canada. Defendants are Canadian corporations. They entered into insurance contracts in

23

Canada, with Plaintiff's Canadian parent company. The contracts are governed by Canadian law. Moreover, when jurisdiction is exercised over a foreign citizen regarding a contract entered into in the foreign country, the country's sovereign interest in interpreting its laws and resolving disputes involving its citizens is implicated. Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K., 757 F.2d 1058, 1065 (9th Cir. 1985). This factor also weighs in Defendants' favor.

C. Conclusion

Our personal jurisdiction analysis requires that we draw a line in the sand. At some point, the facts supporting jurisdiction in a given forum are so lacking that the notions of fundamental fairness inherent in the Due Process Clause preclude a district court from exercising jurisdiction over a defendant. Examining the above factors in their entirety, we conclude that to subject Defendants to the rigors of litigating in Kansas, which has no genuine interest in the dispute and with which Defendants have only tenuous contacts, would be unreasonable and inconsistent with the notions of "fair play and substantial justice" which form the bedrock of our due process inquiry. Accordingly, we reverse the district court's decision denying Defendants' Fed. R. Civ. P. 12(b)(2)

motion to dismiss for lack of personal jurisdiction, and remand with instructions that the cause be dismissed.

REVERSED AND REMANDED.