**William J. BRADSHAW and Robert A. Tooke, Plaintiffs,**

v.

**Edward J. BAPTISTE and Andrew Baptiste, Defendants.**

**No. 97–1034–WEB.**

United States District Court, D. Kansas.

Aug. 12, 1998.

*AMENDED MEMORANDUM*
*AND ORDER*

WESLEY E. BROWN, Senior District Judge.

This is a diversity action brought by plaintiffs William J. Bradshaw, a citizen of Wichita, Kansas, and Robert A. Tooke, a citizen of LaCrosse, Wisconsin, against defendants Edward J. Baptiste, a citizen of Pittsfield, Massachusetts and Andrew Baptiste, a citizen of Oldwick, New Jersey. This matter comes before the court on the defendants' motions for dismissal for lack of personal jurisdiction and dismissal based on a forum selection clause.

## I. HISTORY OF THE CASE

This case has had a long and somewhat convoluted history. The plaintiffs originally filed their complaint on January 22, 1997 (Doc. 1). At that time, J. Irving Weiss, Martin Weiss, Weiss Research, Inc., Edward Baptiste, and Andrew Baptiste were the named defendants. The plaintiffs claimed that the defendants, all working together, orchestrated a fraudulent scheme involving offshore investments in violation of federal and state securities laws. In addition to this, plaintiffs claimed breach of contract, negligent misrepresentations, breach of fiduciary duty, and fraud. Since the original filing in January of 1997, plaintiffs have voluntarily dismissed their complaint with prejudice against J. Irving Weiss, Martin Weiss, and Weiss Research Inc. (Doc. 39).

Shortly before dismissing their complaint against the Weiss defendants, the plaintiffs moved for a default judgment against the Baptiste defendants (Doc. 38). The plaintiffs argued that since service had been proper, and the Baptiste defendants had not made any type of appearance before this court, a default judgment was proper. However, upon a closer examination of the record, the court determined that the original service of process on both of the Baptiste defendants was fatally defective. In point of fact, the service process agent actually left Edward Baptiste's summons with a house painter. In addition to this, the plaintiff's attorney elected not to attempt notifying either of the Baptiste defendants of the pendency of the motion for default judgment.

On December 5, 1997, this court ruled against the plaintiffs' motion for default judgment for, among other reasons, the inadequacy of service of process (Doc. 40). Within that order, the court granted the plaintiffs the opportunity to attain good service of process over the Baptiste defendants.

On February 25, 1998, Andrew Baptiste received notice of the action (Doc. 45). On February 28, 1998, Edward Baptiste received notice (Doc. 48). Although the plaintiffs argue that Edward had notice of the action from the original instigation of the lawsuit, Edward denies this and states that the first notice he had was on February 28, 1998 (Doc. 55).

## II. STANDARD OF REVIEW FOR DEFENDANTS' PRO SE MOTIONS

■ Both Andrew and Edward Baptiste submitted pro se motions to this court. This court will evaluate these motions by a less stringent standard than would be appropriate for formal pleadings drafted by lawyers, pursuant to federal policy. See *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *Green v. Branson*, 108 F.3d 1296 (10th Cir.1997), *United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir.1993) (less stringent standard applies to pro se defendants as well as plaintiffs).

Due to the less stringent standard mentioned above, the court will summarize the defendants' motions as follows. In his motion, Andrew Baptiste moves for a dismissal for lack of personal jurisdiction, as well as dismissal on the grounds of a forum selection clause. Edward Baptiste, in his motion, relies extensively on the forum selection clause, which states that all actions will be brought in a court of the Bahamas. Although he does not specifically argue for a dismissal for lack of personal jurisdiction, the court will decide this issue for reasons enumerated below.

## III. SPECIFIC PERSONAL JURISDICTION

It has been long held in the courts that the touchstone for specific personal jurisdiction is a twofold test: "First, does the defendant's conduct fall within the scope of the relevant provision of the Kansas long arm statute? Second, does the exercise of personal jurisdiction in the particular case comply with the due process requirements of the Fourteenth Amendment as set out in the decisions of the United States Supreme Court?" *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 777–778, 740 P.2d 1089 (1987).

### A. Kansas Long Arm Statutory Requirements

In the case at hand, the relevant long arm statute is K.S.A. 60–308. The statute provides in relevant part: "(b) .... Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinaf-

ter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts: .... (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state." For purposes of this case, only K.S.A. 60–308(b)(5) is relevant.

■■■ The plaintiff carries the burden of demonstrating that personal jurisdiction is proper over the defendant. See *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 263, 777 P.2d 1259 (1989), cert. denied 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990). Furthermore, when a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing that jurisdiction is proper. See *In re Hesston Corp.*, 254 Kan. 941, 870 P.2d 17, Syl. ¶1 (1994).

While the Kansas courts have liberally interpreted the long arm statute as a whole, K.S.A. 60–308(b)(5) has in particular been interpreted quite broadly. In a recent decision, the Kansas Court of Appeals stated "Kansas has a manifest interest in protecting its residents against nonresidents who breach contracts." *Environmental Ventures, Inc. v. Alda Services Corp.*, 19 Kan. App.2d 292, 298–299, 868 P.2d 540 (1994).

■■■ Since this case involves in essence a breach of contract dispute, K.S.A. 60–308(b)(5) is the most appropriate section to examine. The court notes that there is a significant factual dispute between the parties over whether or not an actual signed contract existed. Specifically, the defendants argue that a shareholders' agreement signed by all parties on November 1, 1992 (Doc. 14) is binding upon the plaintiffs. If this were the case, the plaintiffs would be forced to litigate this matter in a court of the Bahamas.

The plaintiffs, in contrast, argue that this shareholders' agreement was superseded by the defendants' subsequent conduct. The plaintiffs, therefore, appear to base their breach of contract claim on an implied contract, since the shareholders' agreement was the only official contract between all the parties.

In keeping with its previous July 29, 1997 ruling in this case (Doc. 24), this court refuses to speak to the issue of whether or not the shareholders' agreement was superseded by subsequent dealings. This is a factual dispute that may best be settled at a later date. However, for purposes of analyzing the parties' conduct within the confines of K.S.A. 60–308(b)(5), the court does find there is enough evidence in the record to satisfy the long arm requirements under this subsection. This is due in large part to the Kansas courts' broad interpretation of K.S.A. 60–308(b)(5), as seen in the recent Kansas Court of Appeals case, *Aspen Products, Inc. v. Global Distributors, Inc.*, 24 Kan.App.2d 475, 947 P.2d 49 (1997).

In *Aspen*, the court of appeals found that mere partial payment on an agreement between parties was enough to satisfy the requirements of K.S.A. 60–308(b)(5). See *Aspen* at 478, 947 P.2d 49. In the case at hand, the plaintiffs gave the defendants approximately $133,000 to invest, all of which is now unaccounted for. This court has little difficulty in finding that an actual or implied contract existed between the defendants and the plaintiffs. For this reason, a jurisdictional base exists for both Baptiste defendants under K.S.A. 60–308(b)(5).

## B. Constitutional Requirements

While the statutory requirements for specific personal jurisdiction are met, there still remains the issue of the constitutional analysis. Within this inquiry, there are essentially two steps. First, the court must determine "whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" *OMI Holdings, Inc. v. Royal Insurance Company of Canada*, 1998 WL 348037, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Assuming such minimum contacts exist, the second question the court must ask is "whether the exercise of personal jurisdiction over the defendant offends 'traditional no-

tions of fair play and justice.'" Id. (quoting *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). This second stage inquiry is also referred to as the "fairness" or "reasonableness" analysis. See id.

These two stages, rather than being independent, are interrelated with one another. This interaction can be seen as a balancing scale such that "depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In other words, a deficiency in fairness may be compensated for by an overabundance of contacts with the forum state.

## IV. ANALYSIS

### A. Andrew Baptiste's Motion

The court will first address Andrew Baptiste's motion to dismiss for lack of personal jurisdiction. There are several tests used in evaluating the minimum contacts of a defendant with a forum state. Firstly, the court must examine the nature and the quality of the defendant's contacts with the forum state, with particular attention to whether the contacts were systematic or continuous. See *Three Ten Enterprises, Inc. v. State Farm Fire and Casualty Company,* 24 Kan. App.2d 85, 90, 942 P.2d 62 (1997). The second question is whether the defendant can reasonably foresee being haled into court in the forum state. See *OMI Holdings,* 149 F.3d at 1091 (citations omitted). The third inquiry is whether the defendant purposefully directed his activities into the forum state. See id. The final question is whether the plaintiff's claim arises out of the defendant's contacts with the forum state. See id.

In the case of Andrew Baptiste, it appears readily apparent to this court that under any of the aforementioned tests, the constitutional requirements for personal jurisdiction are not met. In their response to Andrew's motion, the plaintiffs submitted a complete record of all transactions that William Bradshaw had with all of the defendants (Doc. 49). Of the 43 exhibits, exactly one of

them has Andrew Baptiste's name on it, and that was the shareholders' agreement mentioned previously (Pl.Ex.7).

In the more than four years of contact between the plaintiffs and the defendants, Andrew Baptiste never had any kind of contact with William Bradshaw whatsoever. He never spoke to him, sent him a letter, sent him a fax, or attempted any type of contact with him at all. Furthermore, the only document that ties Andrew to this lawsuit (namely the shareholders' agreement) is, by the plaintiffs' own argument, a nullified document that carries no weight.

For these reasons, the court has no difficulty whatsoever in granting Andrew's motion to dismiss for lack of personal jurisdiction. The only "contact" that Andrew had at all with the plaintiffs was that he signed a shareholders' agreement along with the other defendants. To this courts' knowledge, the first and only interest that the plaintiffs had in contacting Andrew Baptiste at all was at the instigation of this lawsuit.

Since the court grants Andrew Baptiste's motion to dismiss for lack of personal jurisdiction, it is not necessary to discuss his claim regarding the forum selection clause. *Leney v. Plum Grove Bank,* 670 F.2d 878, 879 (10th cir.1982).

### B. Edward Baptiste's Motion

While the court has no difficulty in granting Andrew's motion to dismiss for lack of personal jurisdiction, the situation involving Edward is quite different. As previously stated, the court will look upon Edward's motion somewhat leniently, at least in regard to the procedural aspects, pursuant to established federal policy.

Although Edward did not specifically argue lack of personal jurisdiction in his original motion (Doc. 53), the plaintiffs responded to this argument in their reply in opposition to Edward's motion (Doc. 54). The reason for this is fairly straightforward. The plaintiffs' attorney simply resubmitted his response to the Edward Baptiste's motion to dismiss; the only difference between the two replies is one is addressed to Edward, and the other is addressed to Andrew. The arguments are identical in each.

Since the plaintiff's attorney was responding to Andrew's arguments, rather than Edward's, Edward was understandably confused by this in his reply to the plaintiffs' response (Doc. 55). In his own reply, Edward did address the issue of personal jurisdiction in response to the plaintiffs' arguments. Since both of the parties did address this issue, the court will examine whether or not personal jurisdiction is proper over Edward Baptiste.

The first inquiry is into the nature, quality, and number of contacts that Edward had with the plaintiffs (in particular, William Bradshaw). In their response in opposition to Edward's motion (Doc. 54), the plaintiffs have once again provided the court with a complete list of all of the transactions that William Bradshaw had with the defendants. The following is a listing of all of the personal transactions that Edward had with plaintiff William Bradshaw in the state of Kansas.

The first contact that Edward had with William Bradshaw was on November 26, 1993, approximately one year after Irving Weiss originally contacted the plaintiffs and asked them to invest their money (Pl.Ex.16). Up until this time, William Bradshaw had dealt only with Irving and Martin Weiss in his transactions, and had no personal contact with Edward Baptiste. However, Bradshaw had been informed on numerous occasions that Edward was deeply involved in the handling of his money. Specifically, in two documents labeled "Private Placement Memos," Edward Baptiste is identified as the investment manager for Transnational Treasury Strategies Fund, Ltd. and Transnational Gold Strategies Fund, Ltd., the two companies that the plaintiffs had invested in (Pl.Ex. 11 and 12). Despite the heavy involvement of Edward Baptiste in this investment, the first time the plaintiff had any contact with him was when Edward called him on November 26, 1993 to introduce himself and discuss some of Bradshaw's concerns with the direction of his investment (Pl.Ex.16).

The next contact Bradshaw had with Edward was on Jan. 1, 1994, when Edward called him by phone to discuss his investment (Pl.Ex.17). On April 7, 1994, Bradshaw sent a fax to Edward, inquiring about the status of his investment (Pl.Ex.19). On the same day, Edward faxed Bradshaw a copy of a letter to Barry Herman, an attorney, inquiring about the investment (P.Ex. 21). On June 22, 1994, Edward called Bradshaw to discuss a merger of some sort (Pl.Ex.23). The next day, Bradshaw sent Edward a fax inquiring once again about the status of his investment (Pl.Ex.22).

Bradshaw did not hear from Edward again until December 2, 1994, when he received a fax stating that more details concerning the investment would follow shortly (Pl.Ex.25). On January 8, 1995, Edward faxed Bradshaw a portfolio evaluation (Pl.Ex.26). The next day, Edward called Bradshaw and told him that his $133,000 investment was now worth $114,000 due to expenses (Pl.Ex.27).

Approximately six months later, on July 6, 1995, Bradshaw wrote to Edward, asking how to liquidate his involvement in the group investment (Pl.Ex.28). On August 22, 1996, Martin Weiss wrote to Bradshaw, explaining that he and Irving had lost contact with Edward, and from now on, the plaintiff should attempt to deal directly with Edward (Pl.Ex.37).

On August 26, 1996, Bradshaw wrote a letter to Edward, asking for a full report, and threatening legal action if Edward chose to ignore this letter (Pl.Ex.38). On September 5, 1996, Edward wrote a letter to Bradshaw stating that he would provide him with information concerning the investment money shortly (Pl.Ex.40).

The final correspondence that Bradshaw received from Edward was on October 3, 1996. In a fax, Edward stated that the person with the relevant information, who was in the Bahamas, would not provide any information directly to Bradshaw, but that Edward himself would be able to obtain the records and send them to him (Pl.Ex.42).

Fourteen of plaintiffs' 43 submitted exhibits, concern correspondence between Edward Baptiste and William Bradshaw. From the period of January 1, 1994 to January 9, 1995, it was Edward, rather than the Weiss defendants, who was in nearly exclusive contact with the plaintiff. It was not until the plaintiff was unable to contact Edward after six months that the other defendants became involved once again. Put simply, it appears on the basis of the plaintiffs' records that while the Weiss defendants originally insti-

gated the investment, Edward Baptiste handled the bulk of the investment on a day-to-day basis.

Upon the basis of Edward's contacts with William Bradshaw (in the form of faxes, phone calls, and letters), the court concludes that Edward's contacts with the state of Kansas were of a systematic and continuous nature. Since the first prong of the minimum contacts analysis is thus satisfied, the second question is whether or not the defendant could reasonably foresee being haled into Kansas courts.

The court finds that due to the systematic and continuous nature of these contacts with the plaintiff in Kansas, Edward has sufficient notice that there was a real possibility that he could be sued in Kansas. While the court is cognizant of Edward's arguments concerning the forum selection clause in the original shareholders' agreement, there is still enough evidence in the record to support the court's finding. Specifically, when Bradshaw wrote to Edward on July 6, 1995 and stated that he believed the entire investment deal was off, this too put Edward on notice that Bradshaw did not believe the shareholders' agreement was binding.

The third question in the minimum contacts analysis is whether the defendant purposefully directed his activities into Kansas. The court concludes that by maintaining a systematic and continuous relationship with the plaintiff, Edward's activities were indeed directed into Kansas. This is borne out by the repeated communications between the parties.

Finally, the court concludes that the final step in the minimum contacts analysis, namely whether the plaintiff's claim arises out of the defendant's contacts with the forum state, is also satisfied. In particular, the plaintiffs' allegations of fraud and negligent misrepresentation stem directly from Edward's correspondence with Bradshaw.

Having satisfied the minimum contacts analysis, the next question for the court is whether or not it would be fair or reasonable to force Edward to defend himself in the state of Kansas. As stated previously, it can come as no surprise to Edward that he would be sued in Kansas, since he was effectively put on notice of this through Bradshaw's letters. Furthermore, it appears to the court that the majority of documents and other information are here in Kansas. While it may be true that it will be inconvenient for Edward to defend here, the court concludes that this inconvenience does not rise to the level of a due process violation.

Since the court finds that personal jurisdiction is proper, there only remains the matter of Edward's arguments concerning the forum selection clause. As this court ruled previously last year (Doc. 24), the issue of the forum selection clause is factual dispute, and as such, it would be inappropriate for the court to rule on this at this relatively early stage in the proceedings. This is a matter that will be best addressed at a later date.

## V. CONCLUSION

The court grants Andrew Baptiste's motion for dismissal for lack of personal jurisdiction. This is due to a lack of any contacts whatsoever with the state of Kansas. Edward Baptiste's motion for dismissal for lack of personal jurisdiction is denied, since it does appear that both the statutory requirements of K.S.A. 60–308(b)(5) and the constitutional requirements are satisfied. Edward Baptiste's motion for dismissal based on the forum selection clause is also denied, since the court finds that it would be premature to rule on this issue at this time.

SO ORDERED.