INTERCON, INC., an Oklahoma
Corporation, Plaintiff,

v.

BELL ATLANTIC INTERNET
SOLUTIONS INC., a Delaware
Corporation, Defendant.

No. Civ–97–1620–M.

United States District Court,
W.D. Oklahoma.

Sept. 29, 1998.

**1246**

Emmanuel E. Edem, Thomas A. Wallace, Norman Edem McNaughton & Wallace, Oklahoma City, OK, Sheldon B. Swan, Joseph G. Shannonhouse, IV, Clell I. Cunningham, III, Dunn Swan & Cunningham, Oklahoma City, OK, for plaintiff.

Robert H. Gilliland, Jr., James R. Webb, McAfee & Taft, Oklahoma City, OK, for defendant.

## ORDER

MILES–LAGRANGE, District Judge.

Before the Court is defendant's motion to dismiss this action for lack of general or specific personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2).

This action arises out of defendant's unauthorized connection to and continued use of plaintiff's computer services, which enable the transfer of electronic mail from computer to computer via the Internet.

Plaintiff Intercon, Inc. ("ICON") is an Oklahoma corporation with its principal place of business in Oklahoma City. ICON is in the business of providing "dial-up" Internet access service to individual and business subscribers. *See* Plaintiff's Objection to the Motion to Dismiss for Lack of Personal Jurisdiction, Exhibit A, Affid. of Wes Chew, p. 1–2. Subscribers to ICON's Internet access service are provided access to the World Wide Web, and are able to send and receive electronic mail ("E–Mail") and perform other functions. Id. ICON and an affiliated corporation have been in the business of providing Internet Access Service, including E–Mail capability, since 1994. *Id.*

Defendant Bell Atlantic Internet Solutions Inc. ("BAIS") is a Delaware corporation with its principal place of business in Reston, Virginia. BAIS is a corporate affiliate of Bell Atlantic Corporation. Bell

Atlantic entities provide local telephone services to residents of certain Northeastern and Mid–Atlantic states. *See* Declaration of Harry Joseph McMahon, p. 1. Among other things, BAIS provides an Internet access service to individual and business subscribers located in the Northeastern and Mid–Atlantic United States. *Id.* BAIS' service facilitates the exchange of E–Mail by relaying messages from one computer system to another. *Id.* at 3.

In their briefs, the parties state the following undisputed facts. In July 1996, BAIS launched its dial-up Internet access service for customers in Mid–Atlantic states, and began offering dial-up service to customers in Northeastern states in August 1996. BAIS tailored its service to restrictions placed on local telephone companies by existing statutory and regulatory limitations, including the provisions of the Telecommunications Act of 1996. Among other limits, BAIS cannot carry telephone transmissions across regional boundaries known as Local Access Transport Areas ("LATAs"). Consequently, BAIS connects its subscribers to the Internet with the help of intermediaries known as Global Service Providers ("GSPs"), like ICON. These GSPS carry transmissions from BAIS customers across LATA boundaries and route them to the Internet. These GSPs carry outgoing E–Mail and incoming mail, orchestrating general Internet traffic and providing technical assistance for customers.

Between August and December 1996, when BAIS subscribers clicked the appropriate icon on their computer screen to send in E–Mail message, the message was transmitted from BAIS to ICON's Oklahoma-based mail exchange system, rather than to ICon CMT's New Jersey-based system. DAIS' software routed its subscribers' E–Mail to ICON's domain name ("icon.net"), rather than to ICon CMT's similar domain name ("iconnet.net").[1]

Difficulties arose with ICON's mail server. According to ICON's affidavits, as many as 12,000 subscribers' E–Mail mes-

sages were routed from BAIS to ICON. In late November or December 1996 ICON notified BAIS that unauthorized E–Mail was passing through ICON's mail exchange system. According to BAIS' statement of the facts, BAIS took immediate steps to ensure that the outgoing E–Mail of *new* customers would not be routed through ICON's server, and BAIS alerted its *existing* customers to the problem, instructing subscribers to take steps to ensure that their outbound mail would be routed through the proper mail server. However, not all of BAIS' customers took those steps. Finally, on February 20, 1997, BAIS effectively blocked customers from transmitting E–Mail through ICON's mail server.

In support of its motion to dismiss for lack of jurisdiction, BAIS submitted the affidavit of Harry Joseph McMahon, a Vice President for Network Services with BAIS. *See* Declaration of Harry Joseph McMahon. McMahon states that BAIS' principal place of business is Reston, Virginia; that BAIS has never owned or leased property in Oklahoma, and is not licensed to do business there and maintains no offices or bank accounts there; that BAIS has never sent agents into Oklahoma, has made no effort to solicit business from Oklahoma residents and has never circulated advertising targeting Oklahoma residents; that BAIS conducts no activities in Oklahoma, generates no revenue from Oklahoma and derives no economic benefit from Oklahoma; that BAIS has never sought business in Oklahoma through a local agent, and has never held itself out as doing business in this State.

In Plaintiff's Sur Reply Brief in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction, ICON asserts that BAIS purposefully gave ICON's domain name for its Internet access service subscribers as the means of using the E–Mail portion of its service. *See* Declaration of Harry Joseph McMahan. Plaintiff contends that BAIS

---

**1.** The E–Mail messages were nevertheless routed to their intended destinations.

continued to cause the E–Mail to be routed through ICON's mail server in Oklahoma City for more than two months after being first advised of the situation by employees of ICON in late October or early November, 1996. *See* Affid. Of Wes Chew Paras. 12 & 13. Plaintiff further contends that BAIS had the ability to immediately program its system to prevent the routing of E–Mail to the ICON server but intentionally failed to do so, in an effort to avoid interrupting service to BAIS customers, until February 20, 1997. Plaintiff argues that BAIS' initial and continued use of ICON's E–Mail service constitutes sufficient 'minimum contacts' with Oklahoma as the forum state, justifying the Court's exercise of personal jurisdiction over BAIS in the instant case. Plaintiff contends that BAIS purposefully availed itself of the privileges of conducting activities within the forum state when BAIS failed to effectively terminates its subscribers' use of ICON's computer services.

## *JURISDICTION*

■ Oklahoma's long-arm statute extends to the limits of Due Process Clause. Accordingly, the Court will proceed to analyze the constitutionality of exercising personal jurisdiction under the Due Process Clause. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *OMI Holdings v. Royal Insurance Company of Canada,* 149 F.3d 1086, 1090 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The requirement that "minimum contacts" be present protects a

defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar. *Id.* at 292, 100 S.Ct. 559.

■ The "minimum contacts" standard may be met in two ways: through general or specific personal jurisdiction. A court may exercise general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, the courts apply a "stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996) (quoting *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868). In the alternative, the court may exercise specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King* 471 U.S. at 472, 105 S.Ct. 2174 (internal quotations omitted).

■ "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1417 (10th Cir.1988). However, the plaintiff need only make a prima facie showing to defeat defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). *Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996). The Court resolves all factual disputes in favor of plaintiff. *OMI Holdings, Inc.,* 149 F.3d at 1091.[2]

---

**2.** In the instant case, however, the result would be the same even if the Court resolved

factual disputes in favor of defendant.

## GENERAL JURISDICTION

Having carefully reviewed the parties' submissions, the court finds ICON has failed to make a sufficient showing that BAIS had continuous and systematic general business contacts with Oklahoma. Thus, the Court finds no basis for the exercise of general jurisdiction over BAIS.

## SPECIFIC PERSONAL JURISDICTION

■■■ "Judicial analysis of personal jurisdiction is a 'fact-sensitive' inquiry." *Scott v. Jones,* 984 F.Supp. 37, 42 (D.Me. 1997) (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1388 (1st Cir.1995)). To determine whether the court may exercise specific jurisdiction, the court must find that defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. To make such a determination, the Court must decide, first, whether the defendant purposefully directed its activities at residents of the forum, *Burger King* 471 U.S. at 472, 105 S.Ct. 2174, and second, whether the plaintiff's cause of action arises out of or results from "actions by the defendant himself that create a substantial connection with the forum state." *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). However, a finding of foreseeability, alone, is not dispositive. "Whether a defendant may foresee that a plaintiff may attempt to implead it into an action in a foreign forum is of little relevance in determining whether a defendant has established minimum contacts with that forum." *OMI Holdings, Inc.,* 149 F.3d at 1094. Courts carefully analyze the purposeful availment criteria to ensure "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts...." *United Electrical Radio & Machine Workers of America (UE) v. 163 Pleasant Street Corp.,* 987 F.2d 39, 45 (1st Cir.1993) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) and *World–*

*Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559 (1980)). "[T]here [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Purposeful availment analysis generally requires "affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1420 (10th Cir.1988) (quoting *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 840 (9th Cir.1986)).

■■■ If the court finds sufficient minimum contacts, then it must decide whether the exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." *Asahi,* 480 U.S. at 113, 107 S.Ct. 1026. To do this, the court employs a reasonableness test analyzing the circumstances surrounding the case, including: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

■■■ Having carefully reviewed the parties' submissions, the Court finds no basis for the exercise of specific jurisdiction because BAIS did not establish sufficient minimum contacts when BAIS inadvertently sent subscribers' E–Mail to ICON's domain name, mistaking ICON's domain name ("icon.net") for that of ICon CMT ("iconnet.net"). Further, BAIS did not establish minimum contacts with ICON or Oklahoma as the forum state when BAIS failed to immediately halt the flow of its subscribers' E–Mail to ICON. While BAIS' selection of ICON's name may not be characterized as random, it

may be viewed as a mistake that inadvertently brought BAIS' business activity into Oklahoma via the Internet or World Wide Web. Neither the inadvertent selection of ICON's domain name nor BAIS' notification of subscribers to the mistake and the subsequent reduction of E–Mail traffic—albeit over a two month period—rises to the level of purposeful availment required for the exercise of specific personal jurisdiction. Consequently, the court will not exercise specific, personal jurisdiction in the case at bar.

### CONCLUSION

Defendant's motion to dismiss for lack of personal jurisdiction [doc. no. 12] is GRANTED. This action is dismissed without prejudice.

**IT IS SO ORDERED.**