F I L E D
United States Court of Appeals
Tenth Circuit

OCT 7 2004

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BELL HELICOPTER TEXTRON,
INC.,

Plaintiff-Appellant,

v.

HELIQWEST INTERNATIONAL,
LTD.; COPTER LEASE, LLC,

Defendants-Appellees.

No. 03-4115

---

**Appeal from the United States District Court
for the District of Utah
(D.C. NO. 2:01-CV-954-ST)**

---

Phillip S. Ferguson, Christensen & Jensen, PC., Salt Lake City, Utah, for the
Plaintiff-Appellant.

Stephen R. Stegich, Condon & Forsyth, New York, New York (Carol Clawson,
Clawson Burgess, Salt Lake City, Utah with him on the briefs) for the
Defendants-Appellees.

---

Before **HENRY** , **BRISCOE** , and **McCONNELL** , Circuit Judges.

---

**McCONNELL** , Circuit Judge.

On January 9, 2000 the main rotor mast on a Bell Model 212 Helicopter fractured in-flight and separated from the blade assembly and main rotor hub. The helicopter, which was conducting heli-logging operations near Mt. Pleasant, Utah, plummeted immediately to the ground and was completely destroyed. The thicket of manufacturers, owners, lessors, lessees, corporate parents, subsidiaries, and insurers with interests in the subject helicopter led to litigation both in Utah, the site of the crash, and in Alberta, Canada where some of the relevant parties are citizens. Given the large number of actors with ties to the helicopter it is unsurprising that there are questions about whether the Utah long-arm statute permits personal jurisdiction over Copter Lease, LLC, ("Copter Lease") a party to the Utah action. Whether there is personal jurisdiction over Copter Lease in Utah determines, in large measure, the propriety of jurisdiction over appellant Bell Helicopter's declaratory judgment action. Because we find that Copter Lease is not subject to personal jurisdiction in Utah we also find that the district court did not abuse its discretion in declining jurisdiction over the declaratory judgment action. Accordingly, we AFFIRM the judgment of the district court.

BACKGROUND

Appellant Bell Helicopter manufactured the Bell Model 212 helicopter in Fort Worth, Texas in October, 1974 for the Peruvian Air Force. The helicopter was destroyed in service in 1976. Max Sonnenberg of New Mexico obtained the

salvage and rebuilt the helicopter. The rotor mast that led to the accident near Mt. Pleasant, which was not an original part, was manufactured by Textool, Inc., of Houston, Texas, sometime prior to 1978. It was installed on the helicopter in 1993. Ownership of the helicopter changed hands multiple times. Non-party Eagle Copters, a company incorporated under the laws of Alberta, Canada, purchased the helicopter at a receivership sale in Canada sometime in 1993. The company intended to use or lease it for timber salvage operations on national forest land in the United States. The United States Forest Service requires its contractors to have a U.S. registration number. In February, 1999, Eagle Copters transferred an interest in the helicopter to its corporate affiliate Copter Lease, a New Mexico corporation and a defendant in this action. Copter Lease then acquired FAA registration No. N212HQ. While the exact nature of the relationship between Copter Lease and Eagle Copters is unclear, the district court found that Copter Lease owned the helicopter "in trust for the benefit of" Eagle Copters. Op. 2. Copter Lease took possession in February, 1999.

Copter Lease then leased the helicopter to defendant HeliQwest International ("HeliQwest"), an unaffiliated company incorporated under the laws of Washington State. The "directing mind" of HeliQwest is non-party HeliQwest Aviation, Inc., a company incorporated under the laws of Alberta, Canada. An affidavit by Copter Lease's sole employee states that Copter Lease and HeliQwest

negotiated the lease in Canada, Aplt. App. 29 ¶ 7.  The lease contains an Alberta choice of law provision and forum selection clause. Op. 3.  Copter Lease agreed to deliver the helicopter to HeliQwest at Calgary International Airport, and HeliQwest agreed to return the helicopter to Copter Lease at the same place, when the lease terminated.  *Id.*  The accident occurred while the helicopter was leased to HeliQwest.

On January 9, 2000, the helicopter crashed near Mt. Pleasant, Utah, and was completely destroyed.  On or about November 16, 2001, Eagle Copters, HeliQwest Aviation, HeliQwest, and Copter Lease filed an action in Alberta against Bell Helicopter and two of its subsidiaries, based on theories of negligence and breach of contract.  They sought damages for the loss of the helicopter and other damages.  On or about December 3, 2001, Bell Helicopter filed a complaint in the U.S. District Court for the District of Utah against Copter Lease and HeliQwest, seeking a declaratory judgment concerning the applicability of the General Aviation Revitalization Act ("GARA"), 49 U.S.C. § 40101,  to the accident.  Copter Lease moved to dismiss for lack of personal jurisdiction and HeliQwest moved to dismiss for lack of subject matter jurisdiction.

The district court granted Copter Lease's motion to dismiss.  The court found that because Copter Lease did not transact business in Utah, did not contract to supply goods or services in Utah, and had no office or officers in

Utah, there were not sufficient minimum contacts with Utah to come within the reach of the Utah long-arm statute. Op. 8. As a consequence, the court held that it would violate federal due process to exercise personal jurisdiction over Copter Lease. Op. 9. The district court treated HeliQwest's motion to dismiss for lack of subject matter jurisdiction as a request to decline jurisdiction over Bell Helicopter's request for a declaratory judgment. The court applied the test for deciding whether to hear declaratory actions developed in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). The district court found that the four factors relevant in this case weighed in favor of HeliQwest, and accordingly declined to exercise jurisdiction over the declaratory judgment. Op. 12. Bell Helicopter filed a timely notice of appeal on both orders.

ANALYSIS

**1. Personal Jurisdiction over Copter Lease.**

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state. *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In the context of products liability the minimum contacts requirement turns, in some measure, on foreseeability. The Supreme Court has explained that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum

State [but] that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297. The burden of establishing personal jurisdiction over the defendant is on the plaintiff. *Kuenzle v. HTM Sport Und- Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996) (quoting *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985)). When the evidence presented on the motion to dismiss consists of affidavits and other written materials the plaintiff need only make a prima facie showing. *Id.* (quoting *Behagen*, 744 F.2d at 733). The district court must resolve all factual disputes in favor of the plaintiff. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). This Court reviews the district court's ruling on personal jurisdiction *de novo*. *Id.*

The "minimum contacts" standard may be met in either of two ways. When the defendant has "continuous and systematic general business contacts" with the forum state, courts in that state may exercise *general jurisdiction* over the defendant. *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 414-15 (1984); *Kuenzle*, 102 F.3d at 455. When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise *specific jurisdiction* in cases that "'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (citations omitted);

*Kuenzle* , 102 F.3d at 455.  In this case, Plaintiff Bell Helicopter asserts specific, not general, jurisdiction over Copter Lease.

To support specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla* , 357 U.S. 235, 253 (1958) (citation omitted);  *see also Fidelity and Cas. Co. of N. Y. v. Phila. Resins Corp.*  , 766 F.2d 440, 445 (10th Cir. 1985).  [1] This requirement of "purposeful availment" for purposes of specific jurisdiction precludes personal jurisdiction as the result of "random, fortuitous, or attenuated contacts."  *Burger King* , 471 U.S. at 475 (citations and internal quotation marks omitted).

The Utah long-arm statute authorizes the exercise of specific jurisdiction over:

---

[1]A finding of minimum contacts with the forum is necessary, but is not sufficient for the exercise of personal jurisdiction.  A district court must also consider whether personal jurisdiction is reasonable in light of the circumstances surrounding the case.  *Burger King* , 471 U.S. at 476;  *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*  , 205 F.3d 1244, 1247 (10th Cir. 2000).  Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies.  *Burger King* , 471 U.S. at 477; *Intercon, Inc.*  , 205 F.3d at 1249.

> Any person . . . whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself . . . to the jurisdiction of the courts of this state as to any claim arising out of or related to: ...(2) contracting to supply services or goods in this state.

Utah Code Ann. § 78-27-24. Utah law also provides that the specific jurisdiction statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* § 78-27-22.

Generally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else. *OMI Holdings Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998). In this case, it was HeliQwest, not defendant Copter Lease, which brought the helicopter into the State of Utah. So the question is whether Copter Lease's actions in leasing the helicopter to HeliQwest for use in Utah constitutes "purposeful availment" of the privilege of conducting business in Utah. Copter Lease is a New Mexico corporation with no offices, employees, or operations in Utah; it leased the helicopter to HeliQwest, a Washington corporation, in a transaction taking place in, and subject to the laws of, Alberta, Canada. Aplt. App. 29 ¶ 6. The helicopter was delivered to HeliQwest in Alberta and was to be returned there at the end of the lease. On the basis of these factors, the district court concluded that it lacked personal jurisdiction.

-8-

Bell Helicopter contends, however, that the district court overlooked several facts supporting the inference that Copter Lease solicited business in Utah. This Court has held that even when another party acts unilaterally, "[s]olicitation [by the defendant] is some evidence suggesting purposeful availment." *Far West*, 46 F.3d at 1076. All parties agree that HeliQwest now maintains a principal place of business in Provo, Utah. Bell Helicopter contends that because HeliQwest has had this facility in Provo for an "unknown period," it is possible HeliQwest had its principal place of business in Utah at the time of the helicopter leasing, and thus that Copter Lease's actions in obtaining business with HeliQwest constituted solicitation for provision of goods or services in Utah. Aplt. Br. 13.

One piece of evidence Bell Helicopter offers on this point is a printout from HeliQwest's website listing Provo as the site of a facility. Aplt. App. 93. Because this printout was made roughly two years after the accident, however, it has little bearing on the state of affairs at the time of the lease or the accident. Bell Helicopter also presents evidence that HeliQwest registered to do business in Utah on March 16, 2000. Aplt. App. 233-34. Rather than supporting its case, however, this evidence casts doubt on the notion that HeliQwest had a principal place of business in Utah at the time of the lease or at the time of the accident.

It would be odd for HeliQwest to maintain a principal place of business in a state where it was not even registered to engage in commerce. At best, construing the dispute over timing in the manner most generous to Bell Helicopter, we might infer that HeliQwest had a business presence, but not a principal one, in Utah at the time of the lease.

Even if the lessee operated a facility in Utah at the time of the lease, that would not be sufficient to create personal jurisdiction over the lessor. As *World-Wide Volkswagen* emphasizes, the mere foreseeability that a customer will unilaterally move a chattel into a given state does not create jurisdiction over the vendor of the chattel. *World-Wide Volkswagen*, 444 U.S. at 298; *cf. Far West*, 46 F.3d at 1076 ( holding that the unilateral decision by a third party to place an escrow account in Utah was not sufficient to create jurisdiction over the defendant). At best, Copter Lease could foresee that because HeliQwest had a facility in Utah it might, at some point, take the subject helicopter to Utah. This mere possibility, even if true, does not suggest that Copter Lease purposefully availed itself of the protections of Utah laws. *Phila. Resins Corp.*, 766 F.2d at 446-47 (finding that knowledge that a product would be used in the Rocky Mountain region does not create minimum contacts in Utah).

Bell Helicopter also argues that HeliQwest's efforts to qualify as an official supplier for the 2002 Winter Olympics in Salt Lake City bear on

HeliQwest's personal jurisdiction status. Specifically, Bell Helicopter claims that "[i]t stretches credulity to think that Copter Lease did not know of HeliQwests's [Olympic] intentions... HeliQwest's anticipated commitment to the Olympics would certainly have been a factor in any meaningful negotiations over the terms of the lease." Aplt Br. 13-14. This assertion, to put it mildly, overstates the claim. It hardly stretches credulity to imagine that during lease negotiations in Canada between a New Mexico corporation and a Washington corporation for delivery of a helicopter in Calgary the topic of becoming an Olympic supplier in another state two years later would not surface. Even if HeliQwest did mention its Olympic intentions it is difficult to see how this knowledge means that Copter Lease purposefully availed itself of Utah's legal protections when it leased equipment to HeliQwest for other purposes.

Bell Helicopter's strongest claim is based on evidence that Copter Lease was hoping to lease the subject helicopter to an entity that could secure contracts with the United States Forest Service. Depending on Copter Lease's specific actions, it is possible that this behavior could qualify as the solicitation of Utah business. However, we held in *Far West* that "remote" solicitation is not sufficient to create personal jurisdiction. *Far West*, 46 F.3d at 1076. In *Far West* the solicitation of business was remote in a temporal sense. The defendant offered to explore potential agreements involving the forum state with Far West

during the first stages of negotiation. *Id.* The final agreement, however, did not take hold until three years after the solicitations of the defendant. *Id.* We held that the solicitations of the defendant were too distant from the resulting controversy to support a finding that the defendant purposefully availed herself of the protections of the forum state. *Id.* Bell Helicopter's claims about any possible solicitations by Copter Lease face similar problems with remoteness.

Bell Helicopter would have us believe that Copter Lease "fully intended the helicopter to operate in the state of Utah." Aplt. Br. 15. The only support it can muster for this claim are its own assertions of this point in filings in the court below. The only evidence regarding Copter Lease's intentions is the affidavit of Copter Lease's sole employee stating that Copter Lease was formed, in part, to enable Eagle Copters to obtain contracts with the US Forest Service. Aplt. App. 29, ¶ 6. The record does not contain any evidence of an effort to solicit a Utah lessee, or indeed, any evidence of any type of solicitation.

At most, one can assume that Copter may have encouraged HeliQwest to use the subject helicopter in states, such as Utah, containing national forests. But there are extensive national forests in many of the western states. A general hope that a party will use a product in a general region is too remote an aspiration to qualify as purposeful availment in a specific state. *Cf. Phila. Resins Corp.*, 766 F.2d at 446-47 (1985) (finding that knowledge that a product would

be used in the Rocky Mountain region does not create minimum contacts in Utah). Because there is no evidence in the record of any type of solicitation on the part of Copter Lease, let alone solicitation for use in Utah, we will not infer that Copter Lease made the targeted solicitation necessary for a finding of purposeful availment. As a result, we find that Bell Helicopter has not made the prima facie showing necessary for personal jurisdiction.

At various points in its briefs Bell Helicopter laments its lack of an opportunity to conduct jurisdictional discovery. Aplt Br. 14-15, 17-18, 20, Aplt. Rep. Br. 1. In support of this point Bell Helicopter quotes *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975), for the proposition that "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." Conveniently, Bell Helicopter omits the next sentence in *Budde* stating, "[t]he trial court, however, is vested with broad discretion and should not be reversed unless discretion is abused." *Id.* (citation omitted); *see also Pippinger v. Rubin*, 129 F.3d 519, 533 (10th Cir. 1997). Bell Helicopter does not specifically argue that the district court abused its discretion in refusing Bell Helicopter's requests and we see no reason to make that finding.

Bell Helicopter seems particularly dismayed that the district court did not permit discovery of the lease agreement between Copter Lease and HeliQwest.[2] Aplt. Br. 20. It is possible, though improbable, that the terms of the lease might provide some evidence of purposeful availment of the protection of Utah law. For example, the lease could confine movement of the helicopter to Utah. However, given that the helicopter saw service throughout the Rocky Mountains, Aplt App. 242, 266, it is difficult to imagine how the lease could possibly create personal jurisdiction over Copter Lease in Utah. Given the very low probability that the lack of discovery affected the outcome of this case we find no abuse of the district court's discretion here.

**2. HeliQwest's Motion to Dismiss the Declaratory Judgment Action.**

HeliQwest filed a motion to dismiss Bell Helicopter's declaratory judgment action for lack of subject matter jurisdiction. The district court treated this motion as a request to decline jurisdiction. Applying the five-factor test articulated in *State Farm Fire & Cas. Co. v. Mhoon,* 31 F.3d 979 (10th Cir. 1994), the court declined to assume jurisdiction. The *Mhoon* test inquires:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose

---

[2]Appellee contends that it produced the lease for Bell Helicopter in the Canadian proceedings. Aple. Br. 21 n. 10. However, for the purposes of this appeal, we proceed under the assumption that Bell Helicopter does not have access to these documents.

-14-

in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata* "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mhoon* , 31 F.3d at 983. The district court found that all four of the elements relevant to this case [3] were "decidedly answered" in favor of HeliQwest. Op. 10. We review applications of the *Mhoon* test for abuse of discretion. *Id.* at 983; *United States v. City of Las Cruces* , 289 F.3d 1170, 1179 (10th Cir. 2002).

In light of our conclusion that the district court lacked personal jurisdiction over Copter Lease, it is not necessary to examine all of the *Mhoon* factors. The first factor asks whether a declaratory judgment would settle the controversy. The district court concluded it would not. We agree. Although Bell Helicopter is a party to the Canadian action, HeliQwest is not, having been dismissed. Op. 3. Not being parties to the Utah action, none of Bell Helicopter's adversaries in the Canadian litigation would be bound by a decision of the Utah court. The district court was therefore correct in observing that any

---

[3]The fourth factor involves cases with concurrent state and federal proceedings. As this case involves an international dispute any federalism concerns are not relevant.

-15-

declaratory judgment rendered in this litigation would not settle the controversy. Op. 11.

The judgment of the district court dismissing this action is therefore AFFIRMED.