**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TH AGRICULTURE & NUTRITION, LLC,

Plaintiff - Appellant,

v.

No. 06-3105

ACE EUROPEAN GROUP LIMITED; AGF
INSURANCE, LTD.; AXA GLOBAL
RISKS (UK), LTD.; AXA SCHADE N.V.;
CGU INTERNATIONAL INSURANCE
PLC; CHUBB INSURANCE COMPANY
OF EUROPE S.A.; FORTIS CORPORATE
INSURANCE N.V.; GENERALI
SCHADEVERZEKERING
MAATSCHAPPIJ, N.V.;
GERLING-KONZERN ALLGEMEINE
VERSICHERUNGS-AG; HDI
VEZEKERINGEN N.V.; ROYAL & SUN
ALLIANCE INSURANCE (GLOBAL)
LTD.; WINTERTHUR
SCHADEVERZEKERING
MAATSCHAPPIJ N.V.; XL INSURANCE
COMPANY LIMITED,

Defendants - Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. Ct. No. 05-CV-2423-JWL)**

---

Kenneth H. Frenchman, Dickstein Shapiro Morin & Oshinsky LLP, New York, New
York (Robin L. Cohen, Dorothy A. Thomas, and Andrew N. Bourne, Dickstein Shapiro

Morin & Oshinsky LLP, New York, New York, and Michael J. Abrams, Lathrop & Gage, LLC, Kansas City, Missouri, with him on the briefs), appearing for Plaintiff-Appellant.

Thomas W. Brunner, Wiley Rein & Fielding LLP, Washington, DC (Richard A. Ifft and Karalee C. Morell, Wiley Rein & Fielding LLP, Washington, DC; Dan Biles, Gates Biles Shields & Ryan P.A., Overland Park, Kansas; Norman C. Kleinberg, Derek J.T. Adler, William J. Beausoleil, Hughes Hubbard & Reed, New York, New York, with him on the brief), appearing for Defendants-Appellees.

---

Before, **TACHA**, Chief Circuit Judge, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Petitioner-Appellant TH Agriculture & Nutrition, LLC ("THAN") filed suit in the District Court against Defendant-Appellee insurance companies ("Insurers"), seeking damages and declaratory relief for the Insurers' alleged breach of insurance policies under which THAN is insured. The District Court granted the Insurers' motions to dismiss based on lack of personal jurisdiction over the Insurers and improper venue. THAN appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Because we conclude that the District Court lacks personal jurisdiction over the Insurers, we AFFIRM the District Court's ruling and DISMISS THAN's appeal.

## I. BACKGROUND

THAN is a limited liability company organized under the laws of Delaware with

its principal place of business in Lenexa, Kansas.[1]  THAN is a subsidiary of Philips Electronics North America Corporation ("PENAC"), which in turn is a subsidiary of Koninklijke Philips Electronics N.V. ("Philips"), a Dutch corporation.  The Defendants are thirteen European insurance companies,[2] including five with their place of incorporation and principal place of business in the Netherlands, six with their place of incorporation and principal place of business in the United Kingdom, one with its place of incorporation and principal place of business in Germany, and one with its place of incorporation in Belgium and principal place of business in the Netherlands.  The Insurers subscribed to primary and excess general liability insurance policies known as the World-Wide Liability Insurance Programme (the "Programme" or "policies").  A Dutch insurance broker, AON Nederland, placed the insurance policies under the Programme with individual insurers, and the Defendant-Insurers subsequently issued the policies to Philips in the Netherlands.  The Programme provides worldwide insurance coverage to Philips, the named insured, and its unnamed direct and indirect subsidiaries

---

[1]Defendants dispute that THAN's principal place of business is in Kansas.  THAN has submitted an affidavit from its corporate secretary that states that THAN has maintained its corporate headquarters in Lenexa since 1994.  Because we must resolve factual disputes in favor of the plaintiff, *Bell Helicopter Textron, Inc. v. Heliqwest Int'l*, 385 F.3d 1291, 1295 (10th Cir. 2004), we assume that THAN's principal place of business is indeed in Kansas.

[2]Defendants are ACE European Group Limited; AGF Insurance Ltd.; AXA Global Risks (UK) Ltd.; AXA Schade N.V.; CGU International Insurance; Chubb Insurance Company of Europe S.A.; Fortis Corporate Insurance N.V.; Generali Schadeverzekering Maatschappij, N.V.; Gerling-Konzern Allegmeine Versicherungs-AG; HDI Vezerkeringen N.V.; Royal & Sun Alliance Insurance (Global) Ltd.; Winterthur Schadeverzekering Maatschappij N.V.; and XL Insurance Company Limited.

for the period from December 31, 1997, through December 31, 2001.  By virtue of its status as an indirect subsidiary of Philips, THAN is insured under the Programme.

Under the Programme, the Insurers agree to indemnify the insured against product liability claims involving "personal or bodily injury, including death."  The policies provide:

> The Insurers will, subject to the Limits of Liability, indemnify the Insured in respect of their liability at law for compensation and claimants['] costs and expenses, incurred by the Insured, arising out of Injury to any person, Damage to property, or Financial Loss and occurring during the Period of Insurance.

In addition, the Insurers reserve the right to control any litigation involving claims covered by the policies.  Under a subsection entitled "Control of Claims," the Programme states: "The Insured shall not incur any expense in litigation or otherwise make any payment, settlement, arrangement or admission of liability in respect of any claim for which the Insurers would be liable hereunder without authority of the Insurers."  The subsection also provides: "The Insurers shall in respect of any claim insured hereunder be entitled to use the name of the Insured in the bringing, defending, enforcing or settling of legal proceedings for the benefit of the Insurers and shall have absolute conduct and control of such proceedings."

The policies also include the following "Jurisdiction" clause that addresses the parties' choice of law and choice of forum:

> Any dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained in this Policy is hereby understood and agreed by both the Insured and the Insurers to be subject to the law of

-4-

the Netherlands. Each party agrees to submit to the jurisdiction of any court of competent jurisdiction within the Netherlands and to comply with all requirements necessary to give such Court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such Court.

From at least 1961 to 1981, THAN's predecessor company and a Philips subsidiary, Thompson Hayward Chemical Company of Kansas City, Missouri, distributed raw asbestos. The majority of the company's operations were sold to third parties prior to 1985, since which time THAN's primary function has been to satisfy the company's existing liabilities and to perform environmental remediation services in connection with its environmental liabilities. THAN has been named as a defendant or co-defendant in more than 14,000 claims filed in state and federal courts across the United States alleging bodily injury and wrongful death for exposure to asbestos allegedly distributed by Thompson Hayward. One such claim was filed in Kansas, and THAN's regular business activities with respect to the asbestos claims take place in Lenexa, Kansas.

Philips first provided notice of the asbestos claims to the Programme on November 21, 2002. Thereafter, the Insurers purportedly rescinded their policies, claiming Philips failed during negotiations over the Programme to disclose relevant information known to it regarding the asbestos claims. On August 10, 2005, twelve of the thirteen Insurers (all but XL Insurance Company Limited) brought suit against Philips, PENAC, and THAN in the Netherlands, seeking declaratory relief and confirmation of their rescission of the Programme. On September 29, 2005, THAN

-5-

brought the instant action in the District Court, seeking damages for breach of contract and a declaratory judgment that the Insurers are obligated to indemnify THAN for losses resulting from the asbestos claims and to pay the costs of defending against these claims.

## II. DISCUSSION

"We review de novo [a] district court's dismissal for lack of personal jurisdiction." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004) (quotation omitted). When, as here, a district court enters a dismissal without an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In deciding whether the plaintiff has made the necessary prima facie showing, we resolve any factual disputes in the plaintiff's favor. *Benton*, 375 F.3d at 1074. In order to defeat a prima facie showing of jurisdiction, the defendant must demonstrate "that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quotation omitted).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1276 (10th Cir.

2005) (quotation omitted). "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, we proceed directly to the constitutional issue." *OMI Holdings, Inc.*, 149 F.3d at 1090 (quotation omitted). THAN does not assert that the District Court may exercise general jurisdiction over the Insurers based on their "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984). We therefore ask whether the exercise of specific personal jurisdiction over the Insurers would offend due process.

Our specific jurisdiction inquiry involves two steps. First, we ask whether the nonresident defendant has "minimum contacts" with the forum state such "'that he should reasonably anticipate being haled into court there.'" *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Second, if the defendant has sufficient minimum contacts, we ask whether the court's "exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). This question turns on whether the exercise of personal jurisdiction is "reasonable" under the circumstances of a given case. *Id.* An "interplay exists between the two components [of the specific jurisdiction inquiry], such that, depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *Id.* at 1091–92 (quotation omitted). In other

words, "the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less the defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* at 1092 (quotation and alteration omitted).

A.      Minimum Contacts

The determination of whether a nonresident defendant has minimum contacts sufficient to support a court's exercise of personal jurisdiction depends on the "particular facts of each case." *Benton*, 375 F.3d at 1076 (quotation omitted).  A nonresident defendant has "minimum contacts" with the forum state when he "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.  A defendant may reasonably anticipate being subject to suit in the forum state "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.").

*1.      Purposeful Availment*

An individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state. *Burger King*, 471 U.S. at 478.  But "parties who reach out beyond one state and create continuing relationships and

obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.* at 473. To determine whether a nonresident defendant has purposefully established minimum contacts with the forum state by contracting with another party, we therefore examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479. That is, the contract relied upon to establish minimum contacts must have a "substantial connection" with the forum state. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Moreover, this Court has indicated that the mere presence of the insured within the forum state will not establish a substantial connection. *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1421 n.8 (10th Cir. 1988) (finding due process not satisfied when the insurance contract was not mailed to forum state, the claim was not filed from the forum state, and no premiums were mailed from the forum state).

We must therefore decide whether the insurance policies in the present case establish a substantial connection with Kansas. The Insurers did not solicit business in Kansas. Philips, headquartered in the Netherlands, solicited the insurance policies through a Dutch broker. In addition, the policies were issued to Philips in the Netherlands, THAN paid no premiums from Kansas, Philips tendered THAN's claims in Europe, and all dealings relating to the policies and coverage for the asbestos claims against THAN took place either in the Netherlands or in Switzerland. These interactions in no way involve Kansas and are insufficient to establish minimum contacts with the

state.  *Cf. McGee*, 355 U.S. at 223 (finding insurance company established minimum contacts with California because "[t]he contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died").  Thus, the Insurers' contacts with Kansas are based solely on the issuance of insurance policies that include a worldwide territory-of-coverage clause.  As we explain below, the issuance of an insurance policy that contains a worldwide territory-of-coverage clause and an option to defend the insured is sufficient to establish minimum contacts with the forum state.

In *OMI Holdings, Inc. v. Royal Insurance Co. of Canada*, this Court held that nonresident insurance companies had established minimum contacts with the forum state of Kansas based on the issuance of an insurance policy with a nationwide territory-of-coverage clause.  149 F.3d at 1095.  In that case, OMI, an Iowa corporation with its principal place of business in Minnesota, sued its insurers, Canadian insurance companies, in Kansas.  *Id.* at 1089.  OMI had been sued in Kansas for patent infringement and sought to enforce insurance policies under which the defendant-insurers agreed to defend OMI against certain claims in any United States forum.  We held that "by contracting to defend the insured in the forum state, the insurer creates some contact with the forum state."  *Id.* at 1095.  In concluding that the insurers had established minimum contacts with the forum state, we discussed similar cases decided by other circuits.  *Id.* at 1092–95.

*OMI Holdings, Inc.* is similar, for example, to *Rossman v. State Farm Mutual*

-10-

*Automobile Insurance Co.*, 832 F.2d 282 (4th Cir. 1987). In *Rossman*, an automobile insurance company "specifically promised to defend its policyholders from any claim or suit arising from a loss or accident within its policy territory which included the entire United States." *Id.* at 286. The Fourth Circuit held that an automobile insurance company "could anticipate the risk that its clients would travel in their automobiles to different states and become involved in accidents and litigation there." *Id.* Indeed, as the court acknowledged, "[i]nsurance by its nature involves the assertion of claims, and resort to litigation is often necessary." *Id.* (quotation omitted). Moreover, the court noted that the insurance company had "indicated its willingness" to litigate in the foreign forum by agreeing to defend the insured against certain claims; the "expectation of being haled into court in a foreign state [was therefore] an express feature of its policy." *Id.*; *see also McGow v. McCurry*, 412 F.3d 1207, 1215 (11th Cir. 2005) (citing *Rossman*, 832 F.2d at 286, for the proposition that an automobile insurer who issued an insurance policy with a nationwide territory-of-coverage clause established minimum contacts with the forum state because "not only was it foreseeable that [the insurer] might be sued in [the forum state] . . . but the 'expectation of being haled into court in a foreign state is an express feature of its policy'"); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990) (holding that, because the insurer contracted to indemnify and defend the insured nationwide, "litigation requiring the presence of the insurer [in a foreign forum] is not only foreseeable, but it was purposefully contracted for by the insurer"); *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 720 (D.C. Cir. 1986)

(holding that products liability insurer could anticipate being haled into foreign forum because insurer knew that insured distributed its products nationwide, that insured was likely to be sued anywhere in the nation, and that insurer would likely be impleaded over its duty to indemnify or defend insured nationwide).

Notably, the policies at issue here differ from the policy in *OMI Holdings, Inc.*, because they do not contain a clause requiring the Insurers to defend THAN in litigation.[3] The policies do, however, specify that the "Insured shall not incur any expense in litigation or otherwise make any payment, settlement, arrangement or admission of liability in respect of any claim for which the Insurers would be liable hereunder *without authority of the Insurers*," and that the "Insurers shall in respect of any claim issued hereunder be entitled to use the name of the Insured in the *bringing, defending, enforcing or settling of legal proceedings* for the benefit of the Insurers *and shall have absolute conduct and control of such proceedings*" (emphasis added). Thus, although the Insurers are not required to defend THAN, they reserve the right to do so. The policies therefore expressly contemplate the Insurers' participation in litigation in foreign forums, even if they do not establish an obligation to participate.

We recognize that we have criticized similar reasoning in other circuits' decisions

---

[3]In *OMI Holdings, Inc.*, we held that, "by contracting to defend the insured in the forum state [under a nationwide territory-of-coverage clause], the insurer creates some contact with the forum state." 149 F.3d at 1095. We did not, however, decide the issue presented by the instant case: whether an insurer establishes minimum contacts with the forum state when the insurance policy contains a worldwide territory-of-coverage clause and an *option* to defend the insured.

to the extent it relies on the foreseeability of litigation to establish an insurance company's minimum contacts with a forum state. *OMI Holdings, Inc.*, 149 F.3d at 1094–95. As the Supreme Court has directed, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen*, 444 U.S. at 295. In *World-Wide Volkswagen*, for example, the mere foreseeability that an individual could drive a car into a particular state was insufficient to create personal jurisdiction over automobile distributors for a products liability claim. *Id.* at 298. The Court also noted, however, that foreseeability is not "wholly irrelevant." *Id.* at 297. Foreseeability that an event may occur over which a defendant has no control is distinct from foreseeability of litigation based on the defendant's own actions. *See id.*

When an insurer includes a broad territory-of-coverage clause in an insurance policy, the foreseeability of litigation in foreign states is based on the insurer's own actions. Unlike an automobile distributor, an insurer can control where it is subject to suit by restricting its coverage to certain jurisdictions. Although litigation involving the insurer's participation may be merely foreseeable, the fact that the insurer purposefully bargains and contracts for that participation creates contacts with the forum states within the scope of the policy's territory of coverage. In other words, the insurer's "willingness to be called into court in the foreign forum" is "an express feature of its policy." *Rossman*, 832 F.2d at 286. Unlike the product distributor in *World-Wide Volkswagen*, "an insurer has the contractual ability to control the territory into which its 'product'—the indemnification and defense of claims—will travel." *Farmers*, 907 F.2d at 914; *see also*

*Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 670 (1st Cir. 1980) ("[A]n insurer is not at the mercy of the insured owner's unilateral choice of destination in the same way a seller of chattels is at the mercy of the buyer.").

We acknowledge that we have expressed concern that, when courts focus on an insurance policy's scope of coverage, they base jurisdiction on what a defendant-insurer does *not* do, that is, its failure to exclude the forum state from coverage. *See OMI Holdings, Inc.*, 149 F.3d at 1094 ("*Rossman* is troublesome . . . [in part because] by chastising the defendant for having the ability to exclude certain forums from coverage and not exercising that ability, the court placed great weight on what the defendant did not do. Such reliance, however, is clearly at odds with the Supreme Court's mandate that minimum contacts be based on the defendant's affirmative actions . . . ."). We are not, however, suggesting that insurers establish minimum contacts with a forum state by failing to exclude it from the covered territory. Rather, insurers establish minimum contacts with a forum state by *affirmatively* choosing to include the forum state in the territory of coverage. That is, insurers quite clearly avail themselves of the privilege of conducting business in a forum state when that state is included in an insurance policy's territory of coverage. While it is true that "financial benefits accruing to the defendant from a *collateral relation* to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State," *World-Wide Volkswagen*, 444 U.S. at 299 (emphasis added), insurers benefit from more than a collateral relation when they purposefully include the forum state in a policy's territory of coverage. An

-14-

insurance company "offers this type of broad coverage to induce customers to buy its policies and to pay higher premiums for them. The benefits thereby accruing to [the insurance company] are neither fortuitous nor incidental." *Rossman*, 832 F.2d at 287; *see also Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 791 (8th Cir. 2005) (same); *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 456 (6th Cir. 1993) ("The fact that [an auto insurer] chose to provide coverage for all fifty states—indeed, such coverage is almost certainly the only kind of marketable auto insurance—constitutes purposeful availment of any individual state's forum.").

Moreover, in assessing the risk involved in insuring a product, an insurer must specifically consider the scale of a product's distribution. Referring specifically to products liability insurance, the D.C. Circuit explained how an insurer purposefully directs its activities at a forum state by contemplating the risks associated with a product's distribution:

> In determining the scope of the risk they have insured, insurers must consider the scale on which its insured has distributed a potentially dangerous product. The broader the distribution the greater the risk—and presumably the higher the premium. Thus insurers cannot be said to have failed to avail themselves, in a conscious and deliberate manner, of the benefits of doing business in those fora in which the insured manufacturer distributes its products.

*Eli Lilly & Co.*, 794 F.2d at 721; *see also CSR Ltd. v. Fed. Ins. Co. et al.*, 146 F. Supp. 2d 556, 562 (D.N.J. 2001) (holding that defendant insurance companies had "purposefully availed themselves, in a 'conscious and deliberate manner' of the risks and benefits of doing business" in the forum state because the policies included worldwide territory-of-

-15-

coverage clauses and the insurers "undertook to insure [the plaintiff] with the knowledge that they risked indemnifying [the plaintiff] against asbestos claims [on a worldwide basis] and factored that risk into the price of the coverage they offered").

In the present case, the Insurers' minimum contacts are clearly based on the their affirmative action. The Insurers reached out to the forum state by including it within the policies' worldwide territory-of-coverage clause. Indeed, the Insurers acknowledge that they make deliberate choices regarding their policies' scope of coverage: to support their contention that the asbestos claims are not covered under the Programme, the Insurers argue that they were not informed of that risk and therefore could not take it into account when affirmatively extending coverage to Philips and its subsidiaries. By reserving the right to defend insured entities and by agreeing to make indemnity payments within the territory of coverage, the Insurers have purposefully availed themselves of the privileges and benefits of conducting business in any forum state within the covered territory. These actions are neither incidental nor accidental; the Insurers have explicitly contracted for them and have received higher premiums in exchange for them. For these reasons, the Insurers have established minimum contacts with the state of Kansas. As we emphasized in *OMI Holdings, Inc.*, however, these kinds of contacts are relatively weak. 149 F.3d at 1095 ("[S]ole reliance on the territory of coverage clause creates contacts which are qualitatively low on the due process scale.").

2.    *Injury Arising out of or Relating to Forum Activities*

Although we have concluded that the Insurers created some contact with the forum

-16-

state, we must still determine "whether a nexus exists between [the] Defendant[s'] forum-related contacts and the Plaintiff's cause of action." *Id.* We ask "whether the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.'" *Id.* at 1091 (quoting *Asahi*, 480 U.S. at 109 (plurality opinion)). The Insurers' contact with Kansas arose when they issued policies that included Kansas within the covered territory and reserved the right to control litigation related to covered claims. THAN is seeking coverage under the policy for judgments entered against it and costs incurred in litigating asbestos claims, at least one of which was filed in Kansas. Consequently, THAN's claims arise out of the Insurers' contact with Kansas. *See id.* at 1095 (concluding plaintiff's claim arose out of defendant insurance companies' forum-related activity because "Defendants' contacts arose when the companies issued policies agreeing to defend Plaintiff from suit in Kansas[, and] Plaintiff complain[ed] that Defendants wrongfully refused to defend them under these policies").

B.    Traditional Notions of Fair Play and Substantial Justice

Even when a defendant has purposefully established minimum contacts with a forum state, "minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction." *Burger King*, 471 U.S. at 477–78 (quotation omitted). Hence, although the Insurers have sufficient minimum contacts with Kansas, we must decide whether the assertion of personal jurisdiction over the Insurers comports with "traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at

-17-

113 (quotation omitted). This determination requires a case-specific inquiry into the reasonableness of the exercise of personal jurisdiction over a defendant who has minimum contacts with the forum state. *See id.* We assess reasonableness by weighing five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000) (citing *Burger King*, 471 U.S. at 477).

In assessing the reasonableness of jurisdiction, we also take into account the strength of a defendant's minimum contacts. As we have previously stated, the reasonableness prong of the due process inquiry "'evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.'" *OMI Holdings, Inc.*, 149 F.3d at 1092 (alteration in original) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)). Here, the Insurers' minimum contacts— based on a worldwide territory-of-coverage clause and a right to defend the insured—are "qualitatively low on the due process scale." *Id.* at 1095. Because their contacts are weak, the Insurers need not make a strong showing of unreasonableness. With this in mind, we consider each reasonableness factor below and conclude that the exercise of personal jurisdiction over the Insurers in Kansas would be unreasonable.

     1.     *Burden on Defendants of Litigating in the Forum*

-18-

"The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114. Consequently, "'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant" in such a situation. *OMI Holdings, Inc.*, 149 F.3d at 1096 (quoting *Asahi*, 480 U.S. at 115).

Because the Insurers are located in Europe, litigating a case in Kansas would subject them to some burden. The record does not contain evidence indicating that the Insurers conduct business in Kansas. *See, e.g.*, *Benton*, 375 F.3d at 1079 (finding burden significant when Canadian corporation had no license to conduct business in the forum state of Colorado, had no office or property in Colorado, and had no employees in Colorado); *OMI Holdings, Inc.*, 149 F.3d at 1096 (finding burden significant when Canadian corporations had no license to conduct business in Kansas, maintained no offices in Kansas, employed no agents in Kansas, and insured no Kansas residents). In addition to traveling to Kansas, the Insurers would "also be forced to litigate the dispute in a foreign forum unfamiliar with the . . . law governing the dispute." *Id.*

As THAN argues, however, "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Burger King*, 471 U.S. at 474 (quotation omitted). Indeed, as the District Court found, the Insurers are large companies engaged in business on a worldwide basis, and many of them are routinely involved in litigation throughout

the United States. *Cf. Pro Axess, Inc.*, 428 F.3d at 1280 (finding that, although French corporation was a "substantial distance" from the forum state of Utah, the corporate president's demonstrated ability to travel to the United States for company's business dealings minimized concerns that litigating in Utah may burden corporation). But while modern advances may minimize the burden on the Insurers, they are not significant enough to tip the scales in *favor* of exercising jurisdiction. On balance, therefore, this factor does not weigh in favor of either party.

2.      *Forum State's Interest in Adjudicating the Dispute*

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc.*, 149 F.3d at 1096. Because THAN is a Kansas resident, Kansas has an interest in providing the corporation a forum for its suit. In addition, "[t]he state's interest is . . . implicated where resolution of the dispute requires a general application of the forum state's laws." *Id.* In the present case, the policies explicitly state that the law governing the contract is the law of the Netherlands.[4] Dutch law will therefore govern the subject of the dispute—the interpretation of the insurance policies. Hence, Kansas's interest in providing a forum is offset by the fact that Dutch law will govern the dispute. This factor does not therefore

---

[4]The parties dispute whether federal law or the law of the Netherlands governs interpretation of the Programme's forum selection clause. But this dispute is unrelated to the interpretation of the remainder of the contract, which is governed by Dutch law. THAN has presented no argument to suggest that Dutch law does not govern the remainder of the contract.

weigh in favor of either party.

THAN argues that this factor should weigh in favor of exercising jurisdiction in Kansas because states have a substantial interest in ensuring that their citizens receive bargained-for insurance proceeds. THAN supports its argument by citing *McGee v. International Life Insurance Co.*, in which the Supreme Court explained that a state has a "manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims" and noted that "[t]hese residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable." 355 U.S. at 223. But unlike THAN, the plaintiff in *McGee* was a single individual beneficiary of a life insurance policy. *Id.* at 222. In explaining the disadvantage that insured residents suffer when insurers are not held legally accountable, the Court noted that "when claims were small or moderate[,] individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus, in effect making the company judgment proof." *Id.* at 223. THAN has not shown that similar considerations apply in this case. To the contrary, THAN is a corporation primarily dedicated to managing its own liabilities, as well as those of affiliated companies. Indeed, THAN is already engaged in litigation involving the policies in another forum.

While we do not deny that Kansas has an interest in this litigation,[5] that interest is

---

[5]THAN also asserts that Kansas has an interest in this litigation because it affects Kansas residents with claims against THAN for alleged asbestos exposure. But this

-21-

offset by the fact that Dutch law governs the contract. We conclude that, overall, this factor does not weigh in favor of either party. *See, e.g.*, *Benton*, 375 F.3d at 1079 (concluding factor does not weigh in favor of either party when plaintiff was forum state resident but dispute was governed by Canadian law).

### 3. Plaintiff's Interest in Convenient and Effective Relief

The third factor evaluates whether the plaintiff may receive convenient and effective relief in another forum. *OMI Holdings, Inc.*, 149 F.3d at 1097. "This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.*

We conclude that THAN can get convenient and effective relief in another forum, the Netherlands. THAN quite clearly is not foreclosed from litigating the insurance coverage in the Netherlands. In fact, it is already engaged in litigating that question with twelve of the thirteen Defendants. The only insurance company not a party to the Netherlands litigation, XL Insurance Company, indicated in an affidavit that it would not

---

interest is "less compelling" than Kansas's interest in providing a forum in which THAN, a Kansas resident, may litigate its dispute with a foreign actor. *See OMI Holdings, Inc.*, 149 F.3d at 1096 ("Although less compelling, a state may also have an interest in adjudicating a dispute between two non-residents where the defendant's conduct affects forum residents."). In addition, as the District Court found, THAN has not shown how the current dispute will affect forum residents' claims against THAN for asbestos-related injuries. Thus, in weighing the forum state's interest in adjudicating the dispute, we will not consider the potential impact of this lawsuit on forum residents seeking to recover from THAN.

object to jurisdiction in the Netherlands. Indeed, the policies contain choice-of-law and forum-selection clauses that state that any dispute will be governed by the law of the Netherlands and that all parties to the policies shall submit to the jurisdiction of the Netherlands. THAN can therefore join all necessary parties in the Netherlands.

Furthermore, as the District Court observed, THAN's breach-of-contract claim for failure to pay under the insurance policies necessarily involves resolution of the same issues as those involved in the Netherlands action: whether the insurance companies effectively rescinded their policies and whether the asbestos claims are covered under the policies.[6] Thus, the same question is at issue in the now pending Netherlands action and the litigation here. THAN is less likely to receive convenient and effective relief if it litigates the same question in two separate forums risking possibly contradictory results.

According to THAN, however, the exercise of jurisdiction in Kansas will not result in duplicative or conflicting litigation, which would be burdensome and inefficient for all parties. THAN argues that, until the issue of rescission is adjudicated, a contract of insurance remains in effect and the duty to pay defense costs is enforceable. The Kansas action, THAN argues, involves the failure to pay defense costs, while the Netherlands action involves the separate question of rescission; according to THAN, this precludes the

---

[6]In the Netherlands action, the Insurers seek a declaratory judgment that they lawfully rescinded the policies and are not liable to pay THAN under those policies. In the event that the court rules that they did not lawfully rescind the policies, the Insurers have asked the court to determine whether the asbestos claims are covered under the policies' terms.

finding that the litigation in the Netherlands and Kansas will be the same. But in making

this argument, THAN misinterprets the law. The cases it cites deal with insurance

companies' obligations to make payments *while the rescission question is pending* before

the court. *See In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 465 (S.D.N.Y.

2005); *Assoc. Elec. & Gas Ins. Servs., Ltd. v. Rigas*, 382 F. Supp. 2d 685, 691 (E.D. Pa.

2004).[7] While the court overseeing this litigation may impose upon the Insurers the

obligation to make payments for the asbestos claims *until* the rescission question is

decided, this does not change the fact that the same rescission question must ultimately be

decided in both the Netherlands litigation and the Kansas litigation.

THAN has also failed to show that the law of the Netherlands would prejudice it.

THAN claims that the Dutch court cannot possibly understand or appreciate the realities

of the tort system in the United States. For example, according to THAN, a Dutch court

would be unfamiliar with important concepts, such as the reasonableness of defense costs

and settlements in the context of asbestos personal injury actions. We think THAN

---

[7]These cases are distinguishable for another reason. In each case, the court noted that the insurer's duty to pay under the insurance policy was contemporaneous with the insured's obligation to pay. *In re WorldCom*, 354 F. Supp. 2d at 464; *Rigas*, 382 F. Supp. 2d at 700. Generally, an indemnity policy creates an obligation to reimburse an already satisfied loss, rather than a contemporaneous duty to pay. *In re WorldCom,* 354 F. Supp. 2d at 464 ("It is a general principle under insurance law, that the obligation to pay under a liability policy arises as soon as the insured incurs the liability for the loss, in contrast to an indemnity policy where the obligation is to reimburse the insured for a loss that the insured has already satisfied."). Under the policies in the present case, the Insurers agree to indemnify insured entities for covered losses, rather than liabilities. The duty to pay is not, therefore, contemporaneous with the insured's obligation to pay.

underestimates both the Dutch court's and its own abilities. THAN is undoubtedly capable of presenting objective evidence of the cost of asbestos litigation and settlement to the court, and the court is capable of evaluating that evidence.

Finally, the record does not indicate that THAN's burden of litigating its case in the Netherlands may be so overwhelming as to practically foreclose pursuit of the lawsuit. THAN claims that the "overwhelming majority" of the documents and witnesses necessary to try this case are in the United States, in large part in Kansas. We are not convinced that the location of some evidence in Kansas, or the United States generally, is sufficient to practically *foreclose* litigation elsewhere. THAN's argument ignores the fact that relevant witnesses and documents are located in the Netherlands as well. Resolving whether the asbestos claims are covered and whether the Insurers rescinded the contract will likely require evidence of the contract negotiations and the parties' intent—evidence that is available from Philips in the Netherlands, AON Nederland in the Netherlands, and the Insurers, several of which are located in the Netherlands. *Cf. OMI Holdings, Inc.*, 149 F.3d at 1097 (concluding plaintiff could obtain effective relief in another forum against defendant Canadian corporation despite plaintiff's contention that Kansas was the most efficient forum; of ninety-four witnesses whose testimony was relevant to resolving the dispute, only seven were from Kansas, forty-two were from other states, and forty-five were from Canada). On the whole, because THAN may obtain convenient and effective relief in the Netherlands, this factor weighs against the exercise of jurisdiction in Kansas.

4.    *Interstate Judicial System's Interest in Obtaining Efficient Resolution*

-25-

The fourth factor asks "whether the forum state is the most efficient place to litigate the dispute." *OMI Holdings, Inc.*, 149 F.3d at 1097. "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* (citations omitted).

THAN argues that all of the witnesses relevant to the asbestos litigation are located in the United States and many of them are in Kansas. Specifically, THAN asserts that the court will have to determine the amount of defense costs and indemnity owed to THAN, which may require testimony from current and former THAN employees located in Kansas and underlying defense counsel located in Kansas. First, we will not consider arguments that the United States generally is the better forum to find in favor of litigation in Kansas; THAN must show that Kansas specifically is the most efficient forum. And second, as noted above, THAN fails to recognize all of the witnesses relevant to the case. Before a court can determine how much indemnity the Insurers owe THAN, it must first decide whether they owe THAN indemnity at all. In other words, the court must determine whether the asbestos claims are covered events under the insurance policies. The relevant witnesses for this question are those who negotiated and entered into the contract, namely the Insurers and Philips, none of whom are located in Kansas and at least half of whom are residents of or have their principal place of business in the Netherlands.

Furthermore, other considerations make Kansas an inefficient place to litigate this dispute. Although the alleged wrong, the Insurers' failure to provide coverage to THAN,

-26-

occurred in Kansas, Dutch law will govern the dispute.[8]  Moreover, THAN need not

litigate the action in Kansas to avoid piecemeal litigation.  In fact, as discussed above,

litigating the action in Kansas would serve only to *create* piecemeal litigation and perhaps

even contrary judgments.  Overall, therefore, this factor weighs against exercising

jurisdiction in Kansas.

>    5.    *State's Interest in Furthering Fundamental Substantive Social Policies*

The fifth factor of the reasonableness inquiry "focuses on whether the exercise of

personal jurisdiction by [the forum state] affects the substantive social policy interests of

other states or foreign nations."  *OMI Holdings, Inc.*, 149 F.3d at 1097.  "[T]he Supreme

Court has cautioned that 'great care and reserve should be exercised when extending our

notions of personal jurisdiction into the international field.'"  *Id.* at 1097–98 (quoting

*Asahi*, 480 U.S. at 115).  We must therefore look closely at the extent to which the

exercise of personal jurisdiction interferes with the Netherlands' sovereignty.  *Id.*

Relevant considerations include "whether one of the parties is a citizen of the foreign

nation, whether the foreign nation's law governs the dispute, and whether the foreign

---

[8]THAN argues that we should give the application of foreign law little weight, citing our decision in *Rivendell Forest Products, Ltd. v. Canadian Pacific Ltd.*, 2 F.3d 990, 994 (10th Cir. 1993).  In *Rivendell*, however, we were concerned with an entirely different issue: when a court may dismiss a case based on *forum non conveniens*.  We held that the district court abused its discretion when it dismissed a case on grounds of *forum non conveniens* because its decision was based largely on the fact that foreign law applied to the dispute.  *Id.*  Our jurisdictional inquiry under the Due Process Clause is, of course, different from the discretionary determination of *forum non conveniens*.  For purposes of the jurisdictional inquiry, we have never indicated that the application of foreign law should be given less weight than other considerations.

-27-

nation's citizen chose to conduct business with a forum resident." *Id.* at 1098 (citations omitted).

In light of these considerations, we conclude that exercising jurisdiction in Kansas would interfere with Dutch sovereignty. Although the Insurers chose to conduct business with THAN by issuing policies providing coverage to Philips's subsidiaries, including THAN, none of the Insurers are Kansas residents, and five are residents of the Netherlands. Furthermore, the law of the Netherlands will govern this dispute. In these respects, the circumstances of the present case are quite similar to those in *OMI Holdings, Inc.*, in which we held that the exercise of personal jurisdiction over Canadian corporations would interfere with Canada's sovereignty:

> Exercising personal jurisdiction in Kansas would affect the policy interests of Canada. Defendants are Canadian corporations. They entered into insurance contracts in Canada, with Plaintiff's Canadian parent company. The contracts are governed by Canadian law. Moreover, when jurisdiction is exercised over a foreign citizen regarding a contract entered into in the foreign country, the country's sovereign interest in interpreting its laws and resolving disputes involving its citizens is implicated.

*Id.*; *see also Benton*, 375 F.3d at 1080 (holding that the exercise of jurisdiction would affect Canada's policy interests because the defendant was a Canadian corporation and Canadian law would govern the dispute). While we recognize that "possible conflict with a foreign nation's sovereignty is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court," *OMI Holdings, Inc.*, 149 F.3d at 1097 (quotation omitted), we find that, overall, this factor weighs against the exercise of jurisdiction in Kansas.

In sum, three of the five reasonableness factors weigh in favor of the Insurers and against exercising jurisdiction in Kansas. In addition, the two factors that do not weigh against the exercise of jurisdiction also do not weigh in its favor. Even though modern technology and the worldwide nature of the Insurers' business minimize the burden of litigating in a foreign forum, they do not completely remove the burden. And although Kansas has an interest in providing a forum for resolution of its resident's dispute, this factor ultimately does not weigh in favor of the exercise of jurisdiction because the law of the Netherlands, not Kansas, will govern the dispute. Because the Insurers have limited contacts with Kansas, they need not make a strong showing of unreasonableness to defeat personal jurisdiction. Under these circumstances, we conclude that the exercise of personal jurisdiction over the Insurers would violate traditional notions of fair play and substantial justice.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's ruling and DISMISS THAN's appeal. We also GRANT the Insurers' motion requesting that this Court take judicial notice of the "Statements of Defence" filed on April 26, 2006, in the District Court for Amsterdam, the Netherlands. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (noting that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").